*C. H. Reeve*, for the appellants.

---

**THE BOARD OF COMMISSIONERS OF JASPER COUNTY *v.* SPITLER.**

The legislature may delegate the power to organize new counties.

The act of *March*, 1857, upon this subject, is not in conflict with any provision of the constitution. No legislative power is delegated by that act.

Nov. Term,
1859.

THE BOARD
OF COMMIS-
SIONERS, &C.
v.
SPITLER.

A single county containing the requisite area, may be divided under the act, by its own board of commissioners, acting through a single committee of freeholders.

The Courts will take notice judicially of the area of an established county.

For the causes for which a writ of prohibition may be allowed, the Courts must look to the common law.

Under our system of procedure, the writ can only be used "to command the judge and parties of a suit in an inferior Court, to cease the prosecution thereof, upon a suggestion that the cause originally, or some collateral matter arising therein, does not belong to that jurisdiction, but to the cognizance of some other Court."

Thus the writ will not be granted to prevent a county board from entering an order for the establishment of a new county, under the act of *May*, 1857. An appeal is the proper remedy.

*Friday,*
*December* 2.

APPEAL from the *Jasper* Circuit Court.

DAVISON, J.—The case made by the pleadings is as follows:

Under an act entitled "An act to authorize the formation of new counties," &c., approved *March* 7, 1857, certain citizens of *Jasper* county, residing within a certain district in th.: county, presented to the board of commissioners of said county a petition wherein they set forth the boundaries of the district in which they reside, and allege that such district ought to be formed into a new county, to be called the county of *Newton;* that the area embraced within the boundaries, was, as near a square as may be, and would, if formed into a new county, leave four hundred square miles in the old county of *Jasper*, &c.

The commissioners, at their *December* term, 1857, proceeded to act upon the petition, and, upon final hearing, &c., appointed a committee of three freeholders, residents of said district, to lay off and establish the boundaries of the proposed new county. And the committee thus appointed having made their report, the same was, by order of the commissioners, duly filed, &c.

After the filing of the report, and before the commissioners had further acted in the matter, *Spitler*, the appellee, who was the plaintiff below, filed his complaint in the *Jasper* Circuit Court, reciting, substantially, the above proceedings, and alleging that the act of *March*, 1857, does not authorize the division of a single county by the act of

Nov. Term,
1859.

THE BOARD
OF COMMIS-
SIONERS, &c.
v.
SPITLER.

a single board of commissioners, acting through a single committee of freeholders; and further, that said act of 1857 is in conflict with the constitution. He, plaintiff, in his complaint, suggests that unless prohibited by an order of the Court, the commissioners may, at their next term, enter an order establishing the boundaries of the proposed new county, and certify their proceedings to the secretary of state, &c. He therefore prays that a writ of prohibition may issue, directed to said commissioners, commanding them not to enter upon their order book an order establishing such boundaries, &c.

The defendants demurred to the complaint; but their demurrer was overruled, and an order granted as prayed for, &c.

The act to which these proceedings refer, provides " That whenever a majority of the legal voters to be affected thereby, in any district embracing an area of not less than four hundred square miles, shall desire the formation of a new county, and, by written request, petition the board of commissioners of the several counties to be affected by the formation of said new county, * * * the said boards shall appoint each a committee of three resident freeholders, in each county of the district embraced in such change, who shall form a board of commissioners to lay off and establish the boundaries of the proposed county, * * * and shall report the same to such boards of commissioners of the several counties affected by the formation of said new county, at the next or some subsequent session; and upon said report being made, the boards of commissioners of said several counties aforesaid, shall enter upon their order books, respectively, an order establishing the boundaries of said new county, which shall be by them filed in the office of the secretary of state. Acts of 1857, pp. 25, 26, § 1.

Does this act conflict with the constitution?

It is insisted that the power to organize new counties, has ever been exercised by direct legislation, and cannot be delegated. The position thus assumed is not, in our opinion, well taken. The act of *March*, 1857, is a general law

Nov. Term,
1859.

The Board
of Commis-
sioners, &c.
v.
Spitler.

of uniform operation, to be executed through the agency of the board of commissioners. And it seems to us, that the power thus conferred, so far as it relates to their duties under the act, is purely ministerial and not legislative. Indeed, the constitution itself declares that "The General Assembly may confer upon the boards doing county business in the several counties, powers of a local, administrative character." Art. vi., § 10. Under this provision, the legislature seems to be plainly authorized to confer the power embraced in the act before us. In cases like the present, the taking effect of the law is not the result of any action on the part of the commissioners; nor do they decide whether the act is or is not in force, but simply whether it applies to the case made by the petition, which the act prescribes. This is evidently not the exercise of delegated legislative power; but merely the application of the provisions of a general law to a given case, local in its character.

But it is argued that "the county boundary of *Jasper* county is fixed by law (1 R. S. p. 168, § 39), and art. iv., § 21, of the constitution, having provided that 'No act shall be revised or amended by mere reference to its title; but the act revised or section amended shall be set forth and published at full length,' no general law can be made applicable; and § 39, defining the boundary of said county, can only be amended by an act local in its nature—the subject-matter being local."

The answer to this is, that § 39, defining the boundaries of *Jasper* county, is one provision of an act entitled "An act dividing the state into counties, and defining their boundaries," &c., which is a general law, and that the act in question does not purport to be, nor is it, an amendment of any law; but a general, independent enactment, having for its object the formation of new counties, &c. And this Court having decided that the removal of county seats can be made the subject of a general law, there seems to be no reason why such a law cannot be applied to the case stated in the record. *Thomas* v. *The Board of Comm'rs, &c.,* 5

Nov. Term, 1859.

THE BOARD OF COMMIS- SIONERS, &c.
v.
SPITLER.

Ind. R. 4. In our judgment the act of *March*, 1857, is not in conflict with the constitution.

But it is argued that the act, though it be valid, "does not authorize the division of a single county, by the act of a single board of commissioners, acting through a single committee of freeholders." It says: "Whenever a majority of the legal voters," &c., "in the district," &c., "shall desire the formation of a new county, and, by written request, petition the board of commissioners of the several counties to be affected by the formation of such new county," &c., "the said boards shall appoint each a committee of three freeholders in each county of the district embraced in such change, who shall form a board," &c., "to lay off and establish the boundaries of the proposed new county," &c.

The phraseology thus used, would seem to favor the construction assumed in the complaint; but when the reason and object of the enactment is considered, the intent of the legislature evidently was, that the provisions of the act may be applied to a district existing within the bounds of a single county. Indeed, the words "several" and "each" and "county," and the phrase, "board of commissioners," in the connection in which they are used in the act, plainly allow the construction that a district in an old county may be formed into a new county, provided such district contains an area of four hundred square miles, and that such new county, when so formed, does not reduce the old county below that area. In this instance, we will judicially notice that the old county of *Jasper* contains an area of at least eight hundred square miles, and that, consequently, it may be divided so as to form two counties, each having the required area.

An inquiry is raised as to whether the plaintiff has adopted the proper remedy. The appellants contend that the case stated in the complaint is not one in which a writ of prohibition can be sustained. The statute allows such writ; but fails to point out the causes for which it may be allowed. Hence, for these causes, we must look to the common law. *Blackstone* says: "A prohibition is a writ

Nov. Term,
1859.

THE BOARD
OF COMMIS-
SIONERS, &C.
v.
SPITLER.

issuing out of the Courts of King's Bench, Chancery, Common Pleas, or Exchequer, directed to the judge and parties of a suit in an inferior Court, commanding them to cease from the prosecution thereof, upon the suggestion that either the cause originally, or some collateral matter arising therein, does not belong to that jurisdiction, but to the cognizance of some other Court." This writ, says the same author, may also issue to Courts of special jurisdiction, as ecclesiastical Courts, where, "in handling of matters clearly within their cognizance, they transgress the bounds prescribed to them by the laws of *England;* as, where they require two witnesses to prove the payment of a legacy, a release of tithes, and the like. For as the fact of signing a release, or of actual payment, is not properly a spiritual question, but only allowed to be decided in those Courts, because incident or accessory to some original question clearly within their jurisdiction, it ought, therefore, where the two laws differ, to be decided, not according to the spiritual, but the temporal law; else the question might be decided different ways, according to the Court in which the suit is pending." 3 Blacks. Comm. 112.—3 Toml. Law Dict. 242, *et seq.*—8 Bac. Abr. (Bouv. ed.) 206.—2 Bouv. Law Dict. 377,—2 Chit. Gen. Pr. 388.

This exposition of the causes for which a writ of prohibition may issue at common law, at once shows that, under our system of procedure, it can only be used for one cause, namely, "to command the judge and parties of a suit in an inferior Court, to cease the prosecution thereof, upon a suggestion that the cause originally, or some collateral matter arising therein, does not belong to that jurisdiction, but to the cognizance of some other Court." Perk. Pr. 484. If this position be correct, and we think it is, the writ of prohibition, in this instance, was not the proper remedy, because the board of commissioners of *Jasper* county had, in the case pending before it, original and exclusive jurisdiction. Indeed, we perceive no reason why the party, instead of prosecuting the writ in question, did not adopt the usual remedy of appeal; because such an

appeal is plainly authorized by an express statutory enact-
ment. 1 R. S. p. 229, § 31.

*Per· Curiam.*—The judgment is reversed with costs.
Cause remanded, &c.

*R. L. Hathaway, J. E. McDonald, S. A. Huff, Z. Baird,
L. Barbour, J. D. Howland,* and *A. L. Roache,* for the
board (1).

*R. C. Gregory,* for the appellee (2).

Nov. Term,
1859.

THE BOARD
OF COMMIS-
SIONERS, &C.
v.
SPITLER.

(1) Counsel for the appellant submitted the following argument:

We object, first, that the proceeding is irregular. The boards of commis-
sioners perform judicial functions, and from their decisions an appeal lies to
the Common Pleas or Circuit Court of the county. 1 R. S. p. 229, § 31. The
statute makes ample provision for such appeals, not merely in favor of persons
who are parties to the record in the commissioners' Court, but in favor of all
persons aggrieved who will make an affidavit, showing explicitly the nature of
their interest. And such appeals are allowed, not only from judgments, or
acts of a purely judicial character, but from "all decisions of such commis-
sioners." So we find reports of cases in the Supreme Court, where appeals
have been prosecuted from decisions of the commissioners, in matters rather
of a ministerial than a judicial nature.

In this instance, the petition shows that the proceeding was grounded upon
an act of the legislature, conferring an express power on the commissioners,
and making them the tribunal of original, exclusive jurisdiction in forming
new counties. Of whatever character these functions are held to be, whether
ministerial or judicial, their exercise is subject to review on the appeal of any
party aggrieved. Under such conditions, can the extraordinary remedy of a
prohibition be resorted to? We are very confident it cannot.

The 2 R. S. 1852, art. 43, p. 197, provides for the allowance of the writ of
prohibition, without any enumeration of the causes for which it shall be al-
lowed. We are, therefore, remitted to the common law for these causes.

The doctrine is, perhaps, as clearly stated in Chitty's General Practice as
elsewhere: "With respect to any controlling jurisdiction over inferior Courts,
it was determined by all the judges, that this Court (the Common Pleas), as
well as the King's Bench, has jurisdiction, by prohibition, to confine temporal
as well as ecclesiastical Courts within their proper jurisdiction; but it is more
usual to apply to the Court of King's Bench for that writ in term, or to the
chancellor in vacation, if an inferior Court should then press forward in a suit
over which it has not proper jurisdiction." 2 Chit. Gen. Pr., p. 388. The
same application of this extraordinary mode of legal redress is pointed out by
*Blackstone,* book 3, p. 112. This author alludes to another class of cases in
which a prohibition will lie; as where, in Courts of special jurisdiction, as the
ecclesiastical Courts, in a question not properly spiritual, a rule of evidence
different from the common law is enforced; so that, if such a Court should re-
quire two witnesses to the fact of the signing of a release, or of payment, it
might be restrained by prohibition. "Such a fact is not properly a spiritual
question, but only allowed to be decided in these Courts because incident or

Nov. Term,
1859.

THE BOARD
OF COMMIS-
SIONERS, &C.
v.
SPITLER.

accessory to some original question clearly within their jurisdiction; it ought, therefore, when the two laws differ, to be decided, not according to the spiritual, but the temporal law—else the same question might be determined different ways."

It may be observed that this is an incongruity, which could only happen where there was no final Court of appeals, in which all these different tribunals could be brought into harmonious action; under our system, and in the case under discussion, the inconvenience thus made the reason for a prohibition, does not apply. It is submitted that no case can be found in which an appellate Court has the power to interfere with the proceedings of the inferior Court, in the trial of a cause, by prohibition, unless where the latter is clearly transcending its jurisdiction. If the ground assumed in this cause is a proper one for allowing a prohibition, parties need not any longer resort to the usual course of appeal, but may set the Supreme and Circuit Courts to work with prohibitions, to test the constitutionality of acts which the other Courts of the state are disposed to obey—and, indeed, to control, in any question, the decisions of inferior tribunals.

The unwarranted employment of the writ of prohibition, is conceded in the brief of the appellee.

It is urged, in objection to the proceedings of the commissioners, that the act of 1857 does not contemplate the organization of a new county out of the territory of a single county, but that the boards of commissioners of at least two coterminous counties must appoint each a committee, who shall lay off and establish the new county out of the territory of the two counties so represented. But nothing in the act warrants this interpretation. It is an unreasonable interpretation in every point of view, and so not to be favored. The object of the law is, to permit the majority of voters, in any district of not less than four hundred square miles, to adopt measures to organize that district into a new county. The only restriction imposed by the law, is one copied from the constitution, forbidding the reduction of a county having an area of four hundred square miles, below that area, and any further reduction of a county having already less than that area. There is no other express restriction in the act. The restriction sought to be imposed is by implication. It is not urged, that the territory which the board of commissioners are asked to form into a new county is of less area than four hundred square miles; nor is it pretended that the separation of this territory from *Jasper* county will reduce that county below the area prescribed by the constitution.

The object of the law has been already alluded to. It is quite plain. It offers to the inhabitants of any district of an area not less than four hundred square miles, the privilege of forming out of that district a new county, providing that thereby no county already organized shall be reduced below the limits fixed by the constitution. The reason of the law is as applicable to the case of such a district when it exists entirely within the bounds of a single county, as where it is distributed over several contiguous counties. The phraseology might have been somewhat more copious than the legislature has employed in this act, but hardly clearer. The use of the phrases "several" and "each," in connection with the word "county," and the words "board of commissioners," whenever they appear in the act, evidences the intent of the legislature. That intent, as expressed in the act, clearly conforms to the reason of the law. In this case the law is literally complied with; each board of

commissioners, of the several counties to be affected, has been petitioned, and has acted in the matter. Smith's Comm., § 472, *et seq.*

It is further objected, that because the subject-matter embraced in an act for the formation of a new county is of a local character, it is the proper subject of a local act, and a general law is unconstitutional. This objection. has been sufficiently refuted by this Court in the case of *Thomas* v. *The Board of Comm'rs, &c.*, 5 Ind. R. 4. We content ourselves with a reference to. it..

It is urged by counsel for the appellee, that the power to organize new counties is an act of legislation, and cannot be delegated. The answer to this objection is, in a good degree, anticipated above; for if a general law is applicable, some provisions must be made for giving effect to the law. If the legislature must intervene for the purpose of forming new counties, in each instance, by direct legislation, it can only be by means of a local act, that had been shown not to be necessary. A general law can be made; and to give such a law effect, intermediate agents must be called in with powers sufficient for the proposed object. This is precisely what the legislature has done in this instance. There certainly is nothing in the argument, that because the legislature has heretofore uniformly changed county boundaries, and formed new counties, that body alone can perfect such change. The legislature has heretofore always changed names of citizens, on their petition, by a direct act for the purpose. Does that fact render unconstitutional the provision of the statute which refers such matters to the Courts of justice? Is such power conferred on the Courts, a delegation of legislative functions? It certainly is not. It is only necessary, however, to refer to analogous cases, to show the fallacy of this objection. It is an act of legislation to establish highways. May not the legislature, by general laws, prescribe the terms upon which county and township boards may fix the courses and termini of roads? It is an act of legislation to fix the place of a county seat, and to re-locate a county seat. May not these powers be properly referred to commissioners? It is an act of legislation to name the place at which a state prison shall be constructed.. May not a board be organized with powers to select the place, and determine finally the site for such an object? It is the exercise of one of the highest functions of a legislative body, to levy and assess taxes. May not that power be delegated to municipal bodies, without violation of law? These illustrations might be extended much further. They suffice to show that no principle of the constitution is violated by the enactment of a general law for forming new counties, and referring to a board of commissioners that jurisdiction over the subject which authorizes them to determine when the circumstances exist, that the legislature considered sufficient for the formation of a new county. There is, indeed, no delegation of legislative power whatever. The act is general; of uniform operation, and depends upon no contingency. It goes at once into operation, and the commissioners do not decide whether it is or is not in force in a given case, but merely apply it to the circumstances as they arise; and these circumstances are anticipated by the legislature, and prescribed in the act.

It is further objected by the appellees, that the act of 1857 is so far defective,. for the want of suitable provisions prescribing the mode in which the new county shall be organized, as to involve a great public inconvenience. Where a law is ambiguous, and the intent of the legislature obscure, arguments drawn from the inconvenience of its execution will be listened to by the Courts. But

Nov. Term,
1859.

THE BOARD
OF COMMIS-
SIONERS, &C.
v.
SPITLER.

when the law is free from obscurity, and its provisions are explicit, the inconvenience of applying it is not an argument of much weight. The law in question has no such ambiguity in its provisions. It provides, that after the boundaries are established, "said new county shall be, to all intents and purposes, an organized county, with all the rights and privileges that, under the law, appertain to organized counties." This Court, in the discussion of questions growing out of the various school laws adopted within some years past, have not hesitated to disregard the argument of inconvenience, and to express a decided repugnance to its use in cases where the law is clear.

Under the operation of the act of 1857, the territorial limits of the new county are established. The new county has all the rights and privileges of counties already organized. The various offices necessary to perfect its political organization exist by virtue of this provision of the law, immediately upon the establishment of the boundaries. This Court have decided the point in the cases of *Stocking* v. *The State*, 7 Ind. R. 327; *Rice* v. *The State, id.* 332; and *Driskill* v. *The State, id.* 338, that an office newly created, while without an incumbent, is vacant, and may be filled by appointment, as offices are filled when the vacancy is occasioned by death, resignation, or otherwise.

In such case the 2 R. S. p. 16, provides that the governor shall fill the vacancy in the Common Pleas by appointment. The 1 R. S. p. 512, empowers that judge to fill the vacant offices of the county commissioners; and they supply, by appointment, the other vacant county offices.

But if these provisions do not afford sufficient facilities for the political organization of the new county, the whole difficulty is obviated by the passage of a general law, in *pari materia*, during the late session of the General Assembly. See Acts of 1859, p. 60. The sections of this act, from three to ten inclusive, make ample provision for the emergency. The act of 1857, if it does not contain sufficient provisions to settle the political existence of the new county, has everything in it necessary to determine the boundaries, and establish the territorial limits by which it shall have a geographical existence. This part of the act is perfect and independent. So much of it has been literally complied with. Then, before any public inconvenience is experienced by reason of the want of officers, the act of 1859 comes in to aid the legislation of 1857, and provides everything that is wanting in the latter. This law of 1859, we think, disembarrasses the case of any difficulty, and completes the formation of the new county by giving it the same political features which are found in counties already organized.

(2) Counsel for the appellee made the following points:

I. Injunction is the proper remedy to restrain the doing of any act under an unconstitutional law. *Greencastle Township, &c.* v. *Black*, 5 Ind. R. 557.

II. The defining the boundaries of counties has ever been, from the earliest existence of the state, matter regulated by direct legislation. Rev. Laws of 1824, p. 92.—Rev. Laws of 1831, p. 110.—R. S. 1843, p. 68.—1 R. S. p. 168. Whilst seats of justice in new counties have ever been established by indirect means, though commissioners, &c. Rev. Laws of 1824, p. 372.—Rev. Laws of 1831, p. 459.—R. S. 1838, p. 505.—R. S. 1843, p. 348.

III. County boundaries thus being, through the entire history of the state, a subject of direct legislation, this power cannot be delegated. *Maize* v. *The State*, 4 Ind. R. 348.—Const., art. iv., § 1.

IV. The county boundary of *Jasper* county being fixed by law (1 R. S. p. 16, § 39), and the constitution (art. iv., § 21), providing that "No act shall be revised or amended by mere reference to its title; but the act revised or section amended shall be set forth and published at full length," no general law can be made applicable, and § 39, defining the boundary of *Jasper* county, can only be amended by an act local in its nature, the subject-matter being local. *Stocking* v. *The State,* 7 Ind. R. 327.—*Cash* v. *The Auditor, &c., id.* 227. It is admitted that, as to seats of justice, the law is otherwise. *Thomas* v. *The Board of Comm'rs, &c.,* 5 *id.* 4. But it is submitted that, in the latter case, there are no constitutional barriers to the enactment of a general law. See *Langdon* v. *Applegate, id.* 327; *Kennon* v. *Shull,* 9 *id.* 154.

V. Article i., § 25, of the constitution, provides that "No law shall be passed, the taking effect of which shall be made to depend upon any authority, except as provided in this constitution." It is submitted that under this restriction on the power of legislation, § 39, above referred to, could not be amended or altered by any act of the board of commissioners or the people of the district embraced in the new county.

VI. The act of *March* 7, 1857 (Acts of 1857, p. 25), makes no provision as to the administration of the laws in the newly organized county. What judicial district would the new county belong to? What senatorial district? What representative district?

VII. Article i., § 26, of the constitution, provides that "The operation of the laws shall never be suspended except by the authority of the General Assembly," and can this high legislative prerogative be delegated to a few discontented inhabitants of some remote portion of some border county, acting by petition on the board of county commissioners, who are not even left to act with discretion, but who must obey the behests of those who wish to be "cut off," without regard to the interests of those peace-loving and law-abiding people who are willing to remain within the pale of civil government.