Mode *et al. v.* Beasley *et al.*

Filed January 10, 1896.

No. 17,630.

## MODE ET AL. *v.* BEASLEY ET AL.

COUNTY SEAT.—*Removal.—Local Legislation.—County Business.*—
The relocation of a county seat is not within the prohibition of the Const., Art. 4, section 22, against local legislation regulating county and township business, as the term business signifies the conduct of the usual affairs of the county, and of such as commonly engage the attention of county officers, and not an act which can be done only in a particular case and by authority of a special law.

SAME.—*Removal.—Constitutional Law.—Notice.—Statute Construed.*
—A statute providing for the relocation of the county seat of a particular county is not invalid because it does not provide for notice of the proceedings for the removal, as such proceedings are not an ordinary adversary proceeding which will affect the rights of life, liberty or property.

SAME.—*Removal.—Sufficiency of Petition.—Removal Act of 1889.*—
A petition for the relocation of a county seat, under the act of March 9, 1889, providing that whenever fifty-five per cent. of the legal voters shall by petition request the county commissioners to relocate the county seat, designating the site desired, and that its provision shall apply only where an appraisement and election has been had prior to its passage, need not aver that such election and appraisement were had.

SAME.—*Removal.—Appeal to Circuit Court.—Trial De Novo.—Remanding.*—On appeal from the action of a board of county commissioners on which the cause is tried *de novo*, the right to remand a petition for the relocation of a county seat exists the same as if made before the cause was tried by the board of commissioners.

SAME.—*Removal.—Remonstrance, Time of Filing.—Appeal.*—Remonstrance against the relocation of a county seat cannot be first filed or offered in evidence on appeal from the decision of the county

Mode *et al. v.* Beasley *et al.*

commissioners, under the act of 1889, p. 299, section 2, providing that every filer of any petition or remonstrance shall be liable to the action of the grand jury for false filing of names, which is the only provision as to filing.

SAME.—*Removal.—Instruction. —Number of Legal Voters in County. —How Determined.*—An instruction upon a trial of the question of the relocation of the county seat, upon appeal from the county board, that the number of names on the poll books of the precinct election officers is to be taken as the true number of legal voters in the county, is properly refused in view of the provision of the act of March 9, 1889, that the number of legal ballots cast at the next preceding general election at which a congressman was voted for, with ten per cent. added, shall be considered the whole number of votes of such county.

SAME.—*Removal.—Instruction.— Prima Facie Evidence.— Petitions and Affidavits.*—An instruction on a trial as to the relocation of a county seat, under the act of March 9, 1889, that the petitions and affidavits are *prima facie* evidence that they were signed by the persons whose names are attached thereto, is not reversible error, where from the remainder of the instruction the jury could not have understood that the petitions are to be considered as evidence without the accompanying affidavit.

SAME.—*Removal.—Instruction.—Petitioner Ceasing to Be a Legal Voter after Signing Petition.—Harmless Error.*—An instruction upon a trial as to the relocation of a county seat authorizing the counting of a petitioner who has ceased to be a resident of the county since he signed the petition, is harmless, if error, where no complaint is made that any petitioner ceased to be a legal voter after he signed the petition.

SAME.—*Presumptive Evidence.—Name of Person Appearing on Petition, Who Swears He did Not Sign Same.*—There is no presumption that a person who testifies that he did not sign a petition for the relocation of a county seat is the person of the same name whose signature purports to be attached to the petition, where the inquiry involves the canvass of all the voters of the county without regard to townships or voting precincts.

SAME.—*Removal.—Erroneous Instruction as to Signatures.—Appellate Procedure.—Reversal of Judgment.*—A judgment for removal of a county seat will not be reversed on appeal because of error in an instruction as to a presumption against the validity of signatures of the petitioners where the whole record shows that the merits have been fairly tried and determined.

SAME.—*Removal.—Name on Remonstrance.—Defense.—Same Person Having Previously Signed Petition.*—A name upon a remonstrance to the relocation of a county seat, under the act of March 9, 1889, providing that any person may defend by proof that any of the

Mode *et al. v.* Beasley *et al.*

petitioners have since signed the remonstrance, has no effect unless the remonstrator had previously signed a petition.

SAME.—*Removal.—Names on Petition.*—Discredit is not thrown upon all of the names upon a petition for the relocation of a county seat, by proof that a name on such petition is not entitled to be counted.

SAME.—*Removal.—Instruction.—Qualification of Petitioner, Sanity, etc.—Harmless Error.*—Error in an instruction that no standard of intelligence or sanity is fixed as a qualification for the petition for the relocation of a county seat, is not cause for reversal where it cannot affect sufficient petitioners to make the total number of competent petitioners less than the per cent. required by statute.

SAME.—*Removal.—Cross-Examination of Affiants as to Truth of Facts in Affidavit.*—Opponents to the relocation of a county seat, under the act of March 9, 1889, are not entitled to cross-examine the affiants to the petition as to their personal knowledge of the facts stated in the affidavit.

SAME.— *Removal.— Appeal to Circuit Court.— Power of Circuit Court to Render Final Judgment.*—The circuit court, on appeal from the decision of the county commissioners, under the act of March 9, 1889, as to the relocation of the county seat, may render a final judgment for such relocation under the provision that the appeal shall be under the same regulations as provided by law for appeals in other cases from the board of commissioners, and the section 7865, R. S. 1894, providing that the court, on such appeals, may make a final determination of the proceedings appealed, cause the same to be executed, and send the same down to such board with an order how to proceed.

SAME.—*Removal.—Signature to Petition.—Omission of Month, Day and Hour of Signing.*—Failure to designate the month, day or hour of the signing of a petition for relocation of a county seat, as provided by the act of March 9, 1889, will not invalidate the signature, where none of the petitioners have afterwards signed a remonstrance, as the sole object of stating the time of signing is to determine whether a petition or remonstrance was first signed by the particular petitioner.

SAME.—*Removal.—Signing Both Petition and Remonstrance, and Afterwards Another Petition.—Counting.*—The name of one who signs a petition, subsequently signs a remonstrance, and still later signs another petition, for the relocation of a county seat, under the act of March 9, 1889, must be counted under the provision allowing as a defense only the fact that the petitioner "afterwards signed a remonstrance."

SAME.—*Removal.—Statute.— Local.— Constitutional Law.*—An act relating to the removal of county seats which in its operation can refer only to a single county, being on the subject not embraced

within the prohibition of the Const., Art. 4, section 22, against local legislation upon the particular subjects mentioned, the determination of the Legislature, by its enactment, that a law of general and uniform operation throughout the State cannot be made applicable as required by section 23 to authorize local legislation, is final and conclusive upon the courts.

JUDICIAL NOTICE.—*History of Country and State.*—Courts will take judicial notice of the history of the country and of the State. (See note at end of opinion.)

SAME.—*Location of County Seats.*—The courts will take judicial knowledge of the location of every county seat in the State.

SAME.—*Election for Removal of County Seat.—Appraisement.—Public Acts.—History.*—The court will take judicial knowledge of every election for removal of a county seat, and appraisement of the public buildings of the county, under a State statute, as being public acts, a record of which is required to be.kept by public officers, that are part of the history of the county.

From the Washington Circuit Court.

*J. H. Weathers, J. L. Suddarth, R. J. Tracewell, J. A. Zaring, M. B. Hottel, B. K. Elliott, W. F. Elliott* and *E. R. Odle,* for appellants.

*C. L. Jewett, H. E. Jewett, A. G. Smith* and *C. A. Korbly,* for appellees.

McCABE, J.—This is an appeal from a judgment of the Washington Circuit Court relocating the county seat of Crawford county at English, the proceeding having originated before the board of commissioners of Crawford county, from whose determination of the matter there was an appeal to the circuit court of said county and from which court the cause went on different and several changes of venue finally to the Washington Circuit Court, where it was finally tried, resulting in the judgment already mentioned over appellants' motion for a new trial. The assignment of errors is such as to present the questions hereinafter discussed and decided. The proceeding was had under the act of

March 9, 1889. Acts of 1889, p. 297; R. S. 1894, sections 5579–5588 (Elliott Supp., sections 1152–1161).

It is contended by the learned counsel for appellants that the act is unconstitutional because it is local in its operation and effect, being in violation of section 22 of article 4 of the State constitution.

It is contended that while it purports to be general, it is nevertheless as much local and confined in its operation to Crawford county as if it had been so expressly limited by its terms to Crawford county by name.

It is said in 3 Am. and Eng. Ency. of Law, pp. 696–7 that: "A statute in relation to the counties or cities of a State which affects only a portion of them, or which expressly or impliedly excludes a portion from its operation, is local and special within the meaning of the constitutional inhibitions. The prohibition cannot be evaded by declaring the act to be a general law. Any statute which can apply to but a portion of the State, though purporting to be a general statute, is special legislation." See the authorities there cited.

It is not denied by the appellees that the act in question is as local as if it expressly named Crawford county as the only place in the State where its provisions are to have any operation whatever. But it is contended on their behalf that it is not all local legislation that is inhibited by the constitution and that the location and relocation of county seats are legislative functions and that unless such legislation conflicts with some express inhibition in the constitution it would still be valid notwithstanding it is local and not of uniform operation throughout the State. It is said in 4 Am. and Eng. Ency. of Law, 402–3, and the text is supported by numerous authorities there cited that: "The removal of county seats is a subject over which the law-making power has plenary jurisdiction and control. In the

absence of constitutional restrictions, a removal could be authorized upon any vote, great or small, which that body deemed advisable." * * * "No one has a vested right in the continuance of a county seat at a particular place, and in the absence of constitutional restrictions the Legislature has the power of removing it."

The section of the constitution already referred to, and the one appellants claim is violated by the act in question, provides "That the General Assembly shall not pass local or special laws in any of the following enumerated cases, that is to say;" and then follows the enumeration of seventeen subjects. The inhibition here against local or special legislation on those or any of those subjects is absolute and unconditional. But the next, the twenty-third section of the same article, provides that "In all cases enumerated in the preceding section, and in all other cases where a general law can be made applicable, all laws shall be general and of uniform operation throughout the State."

It was decided in *Thomas* v. *Board, etc.,* 5 Ind. 4, that a special act of the Legislature providing for the removal of the county seat of that county was a violation of the twenty-third section of article 4, *supra.*

That case has since been overruled on the point that such an act is void by virtue of the inhibition against local legislation contained in the twenty-third section, though it has never been questioned on the other point. *Gentile* v. *State,* 29 Ind. 409.

*Thomas* v. *Board, etc., supra,* was decided in 1854, and *Gentile* v. *State* was decided in 1868, which gave the former a standing as law as to local legislation under said section 23, for a period of fourteen years.

The erroneous impression produced by that case on that subject was so great that nearly every Legislature,

if not every one, from that time to the present has been passing acts that were strictly local under titles and enacting clauses purporting to make them general in their operation throughout the State. A conspicuous example of this class of acts is what is generally known as the charter of Indianapolis, approved March 6, 1891. Acts 1891, pp. 137–197. But the city of Indianapolis is not named in the act, both the title and the body thereof purport to make the act general and of uniform operation throughout the State by providing : ''That all cities of this State which had a population of more than 100,000 inhabitants, as shown by the last preceding United States census, shall hereafter be governed by the provisions of this act.'' And then follows the balance of the first section and the other 134 sections of the act, all of which are as expressly confined in their operation to the city of Indianapolis by the part of section 1 above quoted as if the city of Indianapolis had been named as the only place where said act was ever to have any operation or effect whatever.

It is to be noted that the act is confined to cities which had a population of more than 100,000 inhabitants as shown by the last preceding United States census. This, and all courts in the State judicially know and the Legislature knew that the city of Indianapolis was the only city in the State at the passage of the act that the last census report showed had more than 100,000 inhabitants. And no matter how many cities in the State might by subsequent increase of population exceed in number the 100,000 mark, still the act could not apply to them because Indianapolis alone had a population of over 100,000 by the last United States census at the time of passage of the act.

Hence the legislative intent is made clear and undoubted, that the act was designed never to have

any effect or operation anywhere in the State outside of the city of Indianapolis, while it purports to be a general act. And yet no one can entertain a reasonable doubt of the constitutionality of the act, not because it purports to be general but because it is on a subject on which the applicability of a general law has been left by the constitution to the exclusive judgment of the Legislature on inquiry into the facts.

This sort of legislation perhaps is the direct fruit of the deep seated error and the erroneous impression produced by *Thomas* v. *Board, etc., supra,* while it stood as the exposition of section 23 of article 4, *supra,* of the constitution.

And this fruit is evil fruit, because it begets the habit in the Legislature of saying what it does not mean and meaning what it does not say. Nay, more, it begets the habit of using every artifice to conceal at least a large part of the legislative intent. That intent is often hard enough to decipher even when the Legislature knew what it intended, and tried to express it in plain and intelligible language.

But when it attempts to conceal its real intent so as to evade a supposed constitutional inhibition out of a laudable desire to pass much needed local laws, it must bring in its train a brood of evils in construing an act so couched in evasive terms and language that are almost interminable in their effect.

The most amusing attempt of the kind that has fallen under our observation is found in the act approved December 22, 1858, which was designed to be supplemental to the general act and the first one enacted under the new constitution for the removal of county seats approved March 2, 1855; the supplemental act being very much like that of 1889 in question here. Acts of 1858, page 32.

The General Assembly of 1853, the first one under the new constitution had passed two special and local acts for the removal of county seats as had been frequently done under the old constitution; one for the removal of the county seat of Clay county and the other for the removal of the county seat of Switzerland county. Acts 1853, pp. 27, 29. It was the former act that was overthrown in *Thomas* v. *Board, etc., supra*.

This decision gave rise to the general act of 1855 already referred to, and perhaps to the act supplemental thereto of December 22, 1858, above mentioned.

While the latter act purported to be general, yet there were so many circumstances mentioned in the act which must have concurred before it could apply to any county in the State that it is more than likely that if the State would live a thousand years and the act had continued in force that long, no other county than Perry would ever be so circumstanced as to make the act applicable to it.

The county seat of Perry county was removed to its present location under the provisions of that supplemental act, yet all mention of the name of Perry county was as sedulously avoided in the act as if there had been no such county in the State. And yet it is a well-known historical fact that the members of the body that passed it knew as well as we now know that the act could not have any operation or effect anywhere in the State outside of Perry county.

And presumably the reason why the act was not assailed for being local and hence unconstitutional under *Thomas* v. *Board, etc., supra*, is the erroneous impression produced by that case, that the twenty-third section of article 4, *supra*, of the constitution could be evaded by the Legislature in calling or declaring an act general which they and everybody else knew was local.

Other acts of the same character have followed, a leading example of which is the act approved June 4, 1861. Acts of 1861, extra session, p. 29.

It was adjudged by this court in *Gentile* v. *State, supra,* that the enactment of local laws is not forbidden by the two sections of the constitution referred to except on the seventeen subjects enumerated in the twenty-second section and except on other subjects where a general law can be made applicable. And it was further adjudged in that case that the question whether a general law on such other subjects can be made applicable and of uniform operation throughout the State, rests exclusively in the legislative judgment and discretion, which cannot be reviewed by the courts ; and that when the Legislature has determined the question by enacting such a law, that is final and conclusive on that subject.

That decision has been followed and approved from that time to this. *Johnson* v. *Board, etc.,* 107 Ind. 15; *Kelly* v. *State, ex rel.,* 92 Ind. 236; *Warren* v. *City of Evansville,* 106 Ind. 106; *Wiley* v. *Bluffton,* 111 Ind. 152; *City of Evansville* v. *State, ex rel.,* 118 Ind. 426 (4 L. R. A. 93) ; *Hovey* v. *Foster,* 118 Ind. 502 ; *State, ex rel.* v *Kolsom,* 130 Ind. 434; *Bell* v. *Maish,* 137 Ind. 226 ; *Mount* v. *State, ex rel. Richey,* 90 Ind. 29 ; *Young* v. *Board, etc.,* 137 Ind. 323.

It remains to determine whether the act in question providing for county seat removal is a subject embraced in section 22, among the seventeen in which the inhibition is absolute and which the Legislature has no discretion or right of judgment. One of the seventeen subjects embraced in that section and thereby put beyond the power of the Legislature to pass a local law upon it is the subject of "regulating county and township business."

The appellants contend that the subject of removal of

a county seat falls within the subject designated by the words "regulating county and township business," that it is county business.

It was held in effect that it was not county business in *Thomas* v. *Board, etc., supra.* The ruling upon that point in that case has never been questioned.

In *Mount* v. *State, ex rel. Richey, supra,* the court reaffirmed the same doctrine in the following language: "Township business cannot be regulated by special or local laws, but a law requiring reimbursement to an officer is not a regulation affecting township business; it is an act granting special relief in a particular case. The term 'business' as employed in the constitution, does not apply to acts granting relief in particular and extraordinary cases. The term 'business' when applied to a public corporation, signifies the conduct of the usual affairs of the corporation and the conduct of such affairs as commonly engage the attention of township and county officers. It does not mean the performance of an act which can be done only in a particular case and by authority of a special law."

This statement of the law is, we think, correct and especially applicable to the case now before us, and hence, though the act of 1889 be local and special as we think it is, yet being on a subject not embraced in section 22, of art. 4, *supra*, of the constitution, the determination of the Legislature by enacting the law, that one of general and uniform operation throughout the State could not be made applicable, is final and conclusive upon the courts.

Again an act on the subject of the removal of a county seat is no more an act regulating county business, than the act of the board of commissioners of a county in purchasing real estate on a judgment in favor of the county, and yet an act entitled "act to legalize

Mode *et al.* v. Beasley *et al.*

certain acts of the board of commissioners of Clinton county in the purchase of certain grounds at sheriff's sale; vesting a sufficient title thereto in the said county, providing for the payment thereof, and other matters properly connected therewith, and declaring an emergency," was held not to be an act on the subject of regulating county business, in *Kelley* v. *State, ex rel., supra.*

So is the act creating a criminal or superior court for a particular county, an act regulating county business as much as an act for the removal of a county seat, and yet such acts have been uniformly upheld by this court as no infringement of that constitutional provision. *Clem* v. *State*, 33 Ind. 418; *Vickery* v. *Chase*, 50 Ind. 461.

So is an act legalizing the establishment of a free gravel road by the board of county commissioners of a particular county, and yet such an act was upheld as not an act affecting a regulation of county business in *Johnson* v. *Board, etc., supra.*

Another objection urged to the validity of the act in question is that it does not provide for notice of the proceedings for removal. But the proceeding provided for therein is not an ordinary adversary proceeding. No rights of life, liberty or property of any one is to be affected by the proceeding, and hence no one can complain that he was not notified, and was not allowed his day in court. The act calls into exercise the mere ministerial or administrative powers of the board of commissioners. *Board, etc.*, v. *Davis*, 136 Ind. 503 (22 L. R. A. 515).

We therefore hold, that the act is not unconstitutional.

It is contended that the petition was not sufficient to

confer jurisdiction on the board.    The petition reads as follows:

"To the board of commissioners of the county of Crawford.    Your petitioners respectfully represent that we are legal voters of Crawford county.    We request you to relocate the county seat of said Crawford county upon the site hereinafter designated, in accordance with the provisions of an act of the General Assembly of the State of Indiana, entitled 'An act relative to the relocation of county seats, and the construction of county buildings in such cases, and repealing all laws in conflict with this act,approved Marth 9th, 1889.'

"The site where such relocation of said county seat is desired is at the town of English, in Crawford county, Indiana, more than four miles from any county line, and said site is particularly designated and described as follows:    One lot as a site for the court house of said county, described and bounded as follows, to-wit: Commencing eight rods south of a point that is thirty-seven rods and one foot west of the northeast corner of the northwest quarter of the southeast quarter of section twenty-four, township two south, range one west, running thence south sixteen rods, thence east twenty rods, thence north sixteen rods, thence west twenty rods, to the place of beginning; the same containing two acres. Also one lot as a site for the county jail of said county bounded and described as follows: Commencing twenty-nine rods and one foot west of the northeast corner of the northwest quarter of the southeast quarter of section twenty-four, township two south, range one west, and running thence west eight rods, thence south eight rods, thence east eight rods, and thence north eight rods, to the place of beginning, containing one-fourth of an acre.    And your petitioners will ever pray.

"Name . . . . . . . . Month . . . . . . . . Day . . . . . . Hour . . . . . "

To properly determine the objections to the sufficiency of the petition, we must see what the act in question required as to the petition.   The first section provides: ''That whenever fifty-five per cent. of the legal voters of any county in this State, shall by written petition request the board of commissioners of their county to relocate the county seat of said county, designating in such petition the site where such relocation is desired, and shall procure the conveyance to such board by deed conveying good title of two lots of ground, one containing not less than two acres as a site for the court house, and the other containing not less than one-fourth of an acre, as a site for the county jail, to be held by such board for that purpose, and shall deposit with the board the sum of one hundred dollars to pay an architect, and one hundred and fifty dollars to pay commissioners to assess damages, then such board shall proceed to have new county buildings erected thereon and the county seat removed thereto, in the manner, and upon the conditions set forth in the following sections of this act: *Provided*, That the provisions of this act shall apply only in cases where an appraisement and election has been had prior to the passage of this act, under the provisions of an act concerning the relocation of county seats, repealing all laws in conflict therewith, approved April 13, 1885, and where such appraised value of county buildings was less than five thousand dollars : *Provided*, That no county seat shall be relocated at a nearer distance than four miles from any county line.''

The facts which appellants claim should have been, but were not, stated in the petition in order to confer jurisdiction on the board to act, are that there had been an election and appraisement of the county buildings prior to the passage of the act of 1889, and under the act of 1885, and that such appraisement had resulted in

valuing the county buildings at less than $5,000, and that fifty-five per cent. of the legal voters had signed the petition.

These facts, it is contended by the learned counsel, are jurisdictional, and the failure to allege them is a failure to show that the board had jurisdiction. There can be no doubt under the peculiar phraseology of the section quoted that a petition is necessary to authorize the board to act under the statute in removing the county seat. But it is only the statute that makes such petition necessary, and not the general principles of law, this not being an ordinary adversary proceeding where the adverse parties are asserting rights against each other. The Legislature could have authorized the board to proceed to relocate without any petition whatever authorizing them to ascertain the popular will; in any other way the Legislature might provide. *In re Madera, etc., Dist.*, 92 Cal. 296, 14 L. R. A. 755.

Since it is nothing but the statute that makes the petition at all necessary, there is no reason for holding that the petition should contain any other statement than such as the statute requires. It requires, as will have been observed, that the petition must state a request on the part of the petitioners, that the board of commissioners relocate the county seat of such county, and it must contain a designation of the site where such relocation is desired. The Legislature, by the statute quoted, has not required any other statement to be contained in the petition. And as the general principles of law do not require it, it is difficult to see why the jurisdiction of the board should be defeated for failure of the petition to contain other statements.

The statements required by the statute are fully made in the petition, as will have been observed. But it is contended that there could be no removal of the county

seat under the act of 1889 unless there had previously been held an election under the act of 1885 concerning the relocation of county seat in such county, and where under such proceedings the county buildings had been appraised at less than $5,000, and that a majority of the voters of the county had signed the petition. And hence it is urged that these indispensable facts ought to have been alleged in the petition.

Though these facts be absolutely indispensable as conditions precedent to the removal of the county seat under the act of 1889, yet it does not follow that they must be stated in the petition, for the reason already stated that the statute does not, and the general principles of law do not, so require them to be stated, this not being an ordinary adversary proceeding.

The requisite majority of the legal voters of the county must have signed the petition, but that fact need not be stated in the petition. *Board, etc.,* v. *Markle,* 46 Ind. 109, and so, too, as to the facts of the election and appraisement under the act of 1885. They must also exist, or there can be no removal or relocation under the act of 1889. The existence of those facts is not denied by the appellants, and the board found that they did exist.

And there is still another good reason why the facts as to election and appraisement need not be stated in the petition. The act of 1885 referred to in the act of 1889, provides for calling an election to determine the question whether any county seat shall be removed whenever forty per cent. of the whole number of legal voters of any county shall petition the board of county commissioners of such county for such relocation, designating therein the site for such relocation. There is a proviso therein that no election shall be ordered under

VOL. 143—21

the provisions of that act when the appraised value of the county buildings exceeds $20,000, to be determined by appraisers to be appointed as therein provided, by the governor of the State. They are required to make a duplicate appraisement and file one copy with the county auditor and the other with the governor.

The appraisement follows after the filing of the petition, but must precede the election, and forms an indispensable part of the whole proceeding and a condition to the right to order the election.

These acts, then, were all public acts, a record of which was required to be kept by public officers. They were a part of the history of the county. In *State, ex rel. Schumacher, Auditor,* v. *Gramelspacher,* 126 Ind. 398, at page 402, this court said : "The decision of the question presented depends upon whether or not the courts of this State will take judicial knowledge of the title to this tract of land being in the State of Indiana, having been selected by the governor of the State, and a patent issued to the State for the same, in pursuance of an act of Congress approved February 23, 1854, 10 U. S. Statutes at Large, p. 269.

"It is a well established principle that courts will take judicial notice of the history of the country and of the State. The history of the State, or of the country, like the law, will be investigated by the court from its own proper resources.

"In *Andrews* v. *Board,* 70 Ill. 65, it was held that the court would take judicial knowledge of the result of an election for the removal of a county seat."

This is nothing more than all the courts in Indiana are doing all the time. This court, as well as all the trial courts in this State take judicial knowledge of the location of every county seat in the State, because in every transcript that comes before this court on appeal

it appears that the court wherein the trial was had was held at the county seat of the particular county from whence comes the appeal. It was held in *Board, etc., of White County* v. *Gwin,* 136 Ind. 562 (22 L. R. A. 402), that a place appointed by law to hold a circuit court was essential to the validity of its judgments, and that though there was no express statute fixing the county seat as the only place where a valid circuit court could be held, yet long continued practice and custom amounted to positive law that they could be held no other place. See also 4 Am. and Eng. Ency. of Law, 447.

And very many of these county seats were located by virtue of an election under statutes similar to the one now in question. And we are constantly taking judicial notice of those matters. And we do not require a party who invokes the aid of any of the trial courts to allege, in order to show that the court has power to act at the place where the trial occurs, that it is the county seat of the particular county. And yet that is an essential fact to uphold the jurisdiction of the court and the validity of the judgment. But the trial court and this court take judicial knowledge of that fact; and necessarily in order to do so have to take judicial knowledge of the election or proceedings, whatever they were, resulting in the location thereof. It is safe to say that a majority of the county seats have been located at the present site under a special act of the Legislature, yet in almost if not every single case there were provided and appointed by virtue of such acts intermediate agencies to carry into effect the popular will, such as commissioners to locate or relocate, and their acts, whether controlled by election or petition or what not, were required to be made a matter of public record, and all courts in the State take judicial knowledge of these as public acts and historical events. Even the location of the county

seat at Leavenworth, where the circuit court of Craw-
ford county was held when this cause reached the circuit
court on appeal from the board, was removed to that site
through intermediate agencies as provided and appointed
under a special act (see Acts 1843, page 132) all of which
acts resulting in the relocation of Leavenworth are
being judicially recognized by this court and such judi-
cial cognizance was taken of such public acts by the
several circuit courts through which this case passed
before it reached this court and that too without a word,
and apparently without a thought on the part of the
learned counsel for appellants that such judicial cogni-
zance was not perfectly legitimate.   And in this they
are right.

Because if Leavenworth was not the county seat when
this case reached the circuit court of that place, then it
was no court and had no jurisdiction and the appeal
from the board thereto should have been dismissed or
treated as a nullity, leaving the order of the board relo-
cating the county seat at English in full force.   But we
and all the courts in this State must take judicial cogni-
zance that Leavenworth was then the county seat, and
consequently take judicial cognizance of the public acts
of the intermediate agencies in relocating the county
seat of Crawford county at Leavenworth.   In the *State*
v. *Swift*, 69 Ind. 505, page 509, this court said : ''The
courts take notice of the public census taken by authority
of law, of the archives of the State, and the number of
votes cast at the general State election upon all ques-
tions of public affairs that affect the State.   From these
sources we must know all the facts necessary to the
decision of the question whether the amendment is con-
stitutionally ratified or not.''   And so the courts of this
State, it has been held by this court, must take
judicial cognizance from the history of the State that

during and since the war of the Rebellion the adjutant-general of this State has made records of the muster rolls of the different regiments of volunteers furnished by this State in the military service of the United States, though there was no statute requiring such record to be kept. *Board, etc.*, v. *May*, 67 Ind. 562. To the same effect are *Shultz* v. *State*, 65 Ind. 492 ; *Town of Albion* v. *Hetrick*, 90 Ind. 554. So it has been held by this court that judicial cognizance must be taken of the fact as a part of the current history of the public business of the State, that books known as plat books, are, and have been for many years, kept by the county recorders in the various counties of the State in which are recorded the plats of towns and cities and the additions thereto, and that such books are kept as public records, though during all that time there has been no statute authorizing or requiring such books to be so kept by such officers. To the same effect see 12 Am. and Eng. Ency. of Law, 151, 162, and authorities there cited. And so all courts in this State may take judicial knowledge of the election and appraisement of the public buildings of Crawford county, under the act of 1885, concerning the relocation of county seats. Be that as it may, the board at least was bound to take notice of their own administrative acts, nothing appearing to the contrary.

When the case reached the circuit court of Crawford county on appeal, and while pending therein, appellees asked leave of the circuit court to amend the petition as to the names of 510 of the petitioners so as to show the month, day and hour of signing the same by each one of said petitioners. This motion was finally granted by the Harrison Circuit Court over appellants' exception before the case was changed to the Washington Circuit Court. In the signing of some of these 510 names the day had been left blank, in some the month had been

left blank, and in some the hour had not been stated, and in some perhaps all these dates had been omitted. There was no claim that such omissions had occurred through any fraud or evil purpose whatever. But it is claimed that such omission vitiated such petitioners' names. The second section of the act provides among other things: "That any person opposed to such relocation may appear and defend against the application by offering proof that any of the petitioners are not legal voters or did not sign the petition or have since signed a remonstrance against the same; and the fact of signing such remonstrance may be shown *prima facie* by the affidavit of any person who is a competent witness on other cases: *Provided, further,* That both petitions and remonstrances shall not only give the name of such signer, but also the exact date as to month, day of month, and hour of day, such signing was had." There is no other defense than that contained in the language above quoted provided for in, or allowed by, the act. The person opposed to the relocation can appear and defend by proof that any of the petitioners are not legal voters, or did not sign the petition or have afterwards signed a remonstrance against the same.

These three facts can be shown in defense, and none others. There is no provision made for defending on the ground that the month, day or hour has not been given when the petitioner signed his name either to the petition or remonstrance, or that he omitted all of such dates.

It is by virtue of the fifty-five per cent. of the legal voters that have signed the petition, that the same is to be granted, and not by virtue of the fact that they each have set down the exact month, day and hour in which each signed the petition.

The evident object and purpose of requiring the

Mode *et al. v.* Beasley *et al.*

month, day and hour to be stated when the name is signed to the petition or remonstrance, was a mere matter of convenience in proof when the same voter is found to have signed both the petition and remonstrance. If he signed the petition last, his name is to be counted, but if he signed it first, then it is not to be counted. Hence the importance of knowing in such a case which was signed first and which last.

This is conceded to be the object and purpose of the statute in the able brief of the learned counsel for the appellants. But it is not even claimed on their behalf that any of these 510 petitioners had ever signed any remonstrance.

Certainly, under such circumstances, there could be no reason for stating the exact date of their signing the petition, because such date to such signatures could subserve no purpose intended to be accomplished by the statute.

The date to such signatures could not become a subject of controversy in the trial, either before the board or in the circuit court, on appeal. But it may become a subject of controversy as to such petitioners as have signed both petition and remonstrance. It must be borne in mind that the section just quoted makes the affidavit to the remonstrance and that to the petition only *prima facie* evidence of the truth of such statements in such petition or remonstrance respectively. There can be no other meaning to this than that such statements may be controverted by other evidence. Therefore the date may be controverted by other evidence. And though a petitioner may have signed both the petition and remonstrance, stating dates to such signing, showing that the petition was signed last, yet that is only *prima facie*, and if, in fact, the other evidence shows the remonstrance to have been signed last,

the *prima facie* evidence afforded by the dates written is overcome, and it amounts to nothing, and the name cannot be counted. This shows that the validity of the signature of the petitioner, so as to entitle it to be counted, does not depend upon the form in which it appears on paper in the first instance; but that the statute makes it depend upon substance, and right of the petitioner to have a voice on the question of relocation that the form as to date of signing was adopted for convenience of both sides to the controversy, so as to facilitate the proof where the same voter has signed both petition and remonstrance. And this shows further that that part of the statute as to date of signing was directory, and not mandatory.

But if it were otherwise, it could have no application unless to such petitioners as are shown to have signed a remonstrance.

Besides, it is settled law that in all such appeals from the board of commissioners to the circuit court where the cause is tried *de novo*, the right to amend the pleadings exists the same as if made before the cause was tried by the board of commissioners. *Wilcox* v. *City of Tipton*, 143 Ind. 241, where the authorities will be found collected on that subject.

We are of opinion that there was no material error in allowing the amendment and allowing the petitions containing the 510 names to go to the jury.

The appellants offered in evidence before the circuit court remonstrances containing thirty names of petitioners who had subsequently signed these remonstrances, which the trial court refused to admit in evidence, on the ground that such remonstrances had not been filed before the board. It is contended this was error because such remonstrances are not required to be filed at all; that they are mere evidence; that mere evi-

dence is not required to be filed in a suit according to general principles of law, before it is offered in evidence. But that proposition, while true as a general rule, yet there are exceptions to it.

For instance, depositions are evidence, yet they belong to such a peculiar class of evidence, they must be filed in the court wherein they are to be used, a certain length of time before they can be admitted in evidence. This being a special proceeding, governed by a special statute, we must look to that statute first to determine the question. The concluding clause of the section from which we have quoted reads thus: "But any filer of a petition or remonstrance shall be held liable to the action of the grand jury for each and every false filing of names on such petition or remonstrance."

This is the only provision in the act that contains the slightest hint as to filing either petition or remonstrance, yet it seems to be taken for granted by the learned counsel for appellants that the petition must be filed before the board of commissioners. In this we think they are clearly right. And if, by virtue of this provision, the petition must be filed with the board, it is equally true that the remonstrance must also be filed before the board of commissioners. No one in his senses would think of contending that new petitioners could come in and file their petitions under the act after the case had been appealed to the circuit court. And it must be equally true that remonstrances cannot be so filed. It is complained that they were hindered from filing them before the board by the arbitrary action of the board in fixing too short a limit for filing the same. But the record is not in a condition to enable the appellants to raise that question. There was no attempt to show that the shortness of the time prevented them from filing such remonstrances.

But aside from that, if the thirty names had been stricken off the petition it would not change the result. Therefore, the refusal of leave to file such remonstrances and the refusal of the trial court to allow the thirty petitioners to dismiss, if error at all, was a harmless error.

The next point made is that the circuit court did not instruct the jury as to the legal basis of determining the number of legal votes in the county, and that the court refused to instruct as requested by them, that the number of names on the poll books of the precinct election officers was to be taken as the true number of legal voters in the county. The section of the act last quoted from provides: "That the number of all legal ballots cast at the general election in said county, at which a congressman was voted for next preceding the presentation of such petition with ten *per centum* added thereto shall be considered the whole number of votes of such county."

Then it is "the number of all legal ballots actually cast with ten *per centum* added,"and not the number of names on the poll books,that the statute constitutes the criterion of determining the whole number of votes.

But the refused instruction made the number of names on the poll books the criterion. Such instruction was rightly refused because it set up a criterion in violation of the statute, and made a difference in appellants' favor of twenty-three votes.

Complaint is made of the following language in one of the instructions given at the request of appellees, to-wit: "The petitions and affidavit 'are *prima facie* evidence that they were signed by the persons whose names are attached thereto," etc. This is an awkward way of expressing an unquestioned legal proposition, but there was other language in the instruction from

the whole of which it seems clear that the jury could not have understood that the petitions were to be considered any evidence of their contents without the accompanying affidavit. That being true the instruction was in harmony with the statute which has already been set out above. There was no prejudicial error in giving the instruction.

Also in another of the same series of instructions the following language is complained of as error: "Any and every voter who was so qualified at the time he signed the petition is to be counted, no matter when he became a voter of the county, or where he now resides, unless after signing such petition he signed a remonstrance."

The beginning of the same section from which we have been quoting provides that: "When such petition is presented, and the affidavit of one or more persons that the signatures to such petition are genuine, and that the petitioners are legal voters of such county (which affidavit shall be *prima facie* evidence that the facts so stated are true), and  *  *  *  if said board find that fifty-five per cent. of the legal voters of said county have petitioned," etc.

The objection to the instruction is that it authorizes the counting of a petitioner who, though a voter of the county at the time he became a petitioner, has ceased to be a resident of the county, and thereby ceased to be a legal voter at the time of the hearing before the board. That certainly is a construction that the language of the charge is subject to.

Many reasons might be stated why that is the proper construction of the statute. But we need and do not so hold. It is sufficient to say that no complaint is made that any of the petitioners had ceased to be legal voters after they had signed the petition, at least no

instance of the kind is pointed out in the able briefs of appellants' counsel. That being true, the instruction was harmless even if it were erroneous in the abstract.

Another instruction complained of contains the following language : "So if the name of a person appears on a petition, and some person of the same name has testified before you that at the time the petitions were signed by the witness, and that he did not sign any petition, this must not raise any presumption against the petitioner's name which appears on the petition."

This language taken alone is very awkwardly framed, but taken in connection with all the balance of the instruction, the meaning seems apparent to tell the jury that the mere fact that some witness of the same name of one of the petitioners testifies that he never signed the petition, furnishes no ground for a presumption against the validity of the petitioner's name on the petition. If John Smith's name appears signed to a paper, and a man by the name of John Smith appears as a witness, and testifies that he never signed the paper, it is claimed raises the presumption of identity of the person.

That is the general rule, but it has its exceptions. *Aultman, Miller & Co.* v. *Timm*, 93 Ind. 158.

The rule and its exception are stated in 9 Am. and Eng. Ency. of Law, 863, and the text is fully supported by the authorities there cited thus : "It will be considered *prima facie* evidence to show that the party bearing the same name as the party to the suit did the act with which it is sought to affect such party; but if there be several persons of the same name in a particular locality, or in the same business or society, or there are other facts which tend to raise a doubt as to the identity of the person, mere identity of name will not establish identity of person."

To the same effect is *Aultman, Miller & Co.* v. *Timm, supra.* It will be presumed that the payee and indorser of a promissory note is the same person. *Hunt* v. *Stewart,* 7 Ala. 525 ; 9 Am. and Eng. Ency. of Law, 864–5. But suppose a promissory note reads, "we promise to pay, etc.," and two names are signed to it exactly alike, then the rule that identity of name raises the presumption of identity of person does not apply, rather the contrary, if any presumption at all arises. In a suit by an indorsee against a maker of a promissory note mere proof that the name of the payee being the same name indorsed on the note, was a common name in the neighborhood, being Hugh Jones, was sufficient to overcome the presumption of identity of the person from the identity of name. *Jones* v. *Jones,* 9 M. & W. 75 ; see *Jackson* v. *Christmann,* 4 Wend. (N. Y.) 277 ; *Corfield* v. *Parsons,* 1 C. & M. 730. 9 Am. and Eng. Ency. of Law, 864–5, and authorities there cited.

Taking into consideration the whole of the instruction, and that the inquiry involved the canvass of a large majority of the legal voters of a whole county, whose names were signed to the petition, some two or three thousand in number, and that these were not divided into townships or voting precincts, so as to reduce the probability of any persons of the same name, we cannot say that the general rule was applicable, and that the court erred in applying the exception to the rule in this case, especially as the contrary would require the courts to presume bad faith on the part of petitioners in the first instance, which the law never does. If these voters had been counted by townships or voting precincts, the probability of two persons of the same name would be reduced. But the whole county was the voting precinct in this case. Besides there is no

claim made that in fact there were not instances of several persons of the same name in the county.

But even if the general rule was applicable and the instruction not strictly correct, yet the whole record shows that the merits of the cause have been fairly tried and determined. The statute forbids a reversal in such a case on account of an instruction not strictly correct. R. S. 1894, sections 401, 670 (R. S. 1881, sections 398, 658); *Toler* v. *Keiher*, 81 Ind. 383; *Cassady* v. *Magher*, 85 Ind. 228; *Ryman* v. *Crawford*, 86 Ind. 262; *Morris* v. *Casel*, 90 Ind. 143; *Ledford* v. *Ledford*, 95 Ind. 283; *Daniels* v. *McGinnis*, 97 Ind. 549; *Sanders* v. *Weelburg*, 107 Ind. 266; *State, ex rel.,* v. *Ruhlman*, 111 Ind. 17; *State, ex rel.,* v. *Caldwell*, 115 Ind. 6.

Another instruction complained of told the jury that: "If any person having the legal qualifications of a petitioner did sign a petition, and afterwards signed a remonstrance, and still later signed another petition, but no other remonstrance, and all these things took place before the petitions were presented to the board of commissioners of Crawford county, then the name of the petitioner is to be counted."

The only thing that can prevent the counting of the name of a qualified voter whose name is found signed to a proper petition as provided by the act is that he "afterwards signed a remonstrance against the same."

But if it were otherwise the evidence outside of the matters of this kind fully sustained the verdict, and an instruction not strictly correct is not cause for reversal. See authorities last above cited.

Another instruction complained of told the jury in effect that a name on a remonstrance had no effect unless such remonstrator had previously signed a petition. This is exactly the force and effect of the statute already quoted, and was a correct statement of the law.

Another instruction complained of told the jury "if it should appear. that one or more names upon a petition ought for any legal reason not to be counted, that fact will not of itself affect the other names upon the petition."

The objection to this instruction is that when a name on a petition is shown not to be entitled to be counted it ought to throw discredit on all the other names on that petition. This objection is untenable and the instruction was correct.

In another instruction the jury were told: "No standard of intelligence or sanity is fixed as a qualification for a petitioner. The only qualification is that at the time of the signing and presentation of the petition the petitioner was a legal voter of Crawford county," of which complaint is made.

It is only claimed that this instruction harmed the appellants in that the evidence established that two of the petitioners were insane and one was an idiot. If the instruction was wrong this is the full extent of the injury claimed by the appellants that it inflicted on them. It gave three votes for relocation more than appellees were entitled to.

We need not, and do not, decide whether it is correct or incorrect, because after rejecting these three petitioners it leaves more than fifty-five per cent. of the legal voters of the county as petitioners. If wrong, the instruction was harmless.

Another ruling complained of is the refusal of the trial court to allow the appellants to call one of the affiants to one of the petitions to cross-examine him as to his personal knowledge of the facts stated in his affidavit. There was no error in this ruling, as there is no provision made in the statute for such cross-examination any

more than in an affidavit for a change of venue or the like.

The last ruling complained of is overruling appellants' objection to the judgment and overruling what they call a motion to modify the same.

The judgment was that the county seat of Crawford county be relocated as prayed for in the petition by changing the same from the town of Leavenworth, where the same is now located, and relocating the same upon the site described in the petition, which description is again set out in the judgment.

It is contended that the circuit court had no power to render such a judgment, that such power belongs exclusively to the board of commissioners, and that the circuit court should have made the proper finding and sent the case back to the board with instructions how to proceed. It may be that the circuit court rendered the final judgment because it supposed the appellants were so thoroughly dissatisfied with all the doings of the board in the case, that they would prefer to have the circuit court render the judgment. However this may be, it is difficult to see what difference it could make to the appellants which court entered the final order. But if the circuit court had no power that is an end of the matter.

The act of 1889, under which the proceeding was instituted and carried on, provides that: ''There shall be allowed an appeal to the circuit court and supreme court by any person or persons aggrieved    *    *    *    under the same regulations as now provided by law for appeals in other cases from the board of commissioners.'' And that law in other cases on appeal from the board of commissioners provides that: ''Such court may make a final determination of the proceeding thus appealed, and cause the same to be executed, or may send the

same down to such board with an order how to proceed." R. S. 1894, section 7865 (R. S. 1881, section 5778). Therefore there was no error in overruling the objection to the judgment or the motion to modify the same.

Finding no available error in the record, the judgment is affirmed.

Filed January 10, 1896.

NOTE.—The power of the court to take judicial notice of facts is the subject of a very extensive note to *Olive* v. *State* (Ala.), 4 L. R. A. 33.