Jordan, C. J.
This action was instituted in the Jackson Circuit Court by the State, on the relation of relators, Brown and Mills, for a writ of mandate against the Board of Commissioners of the County of Jackson, and the other apellants as members thereof, to compel them to order a special election to enable the voters of said county to determine whether the county seat of Jackson county should be changed from Brownstown to Seymour. The action is based upon an act of the legislature, entitled “An Act providing for the relocation of county seats in counties of this State having an area of more than five hundred square miles,” etc., passed March 9, 1895. (Acts 1895, p. 217.) Upon application the cause was venued to the Scott Circuit Court. Appellants, after demurring to the complaint upon the ground of insufficiency of facts, filed an answer in one paragraph, wherein they alleged that the copy of the record attached to the. affidavit of the Auditor of State, alleged in the complaint to have been filed with the petition, presented to the board of commissioners, failed to show the number of square miles in Jackson county, and also failed to show that the number of square miles in said county was 508, and further that it fails to show anything as to the number of square miles in said county. Appellees replied to this answer by a denial, and upon the issues joined a trial by the court resulted in a- peremptory writ of mandate being awarded against ap *478 pellants as prayed for in the complaint. The errors assigned and relied upon for a reversal of the judgment are based upon the action of the court in overruling the demurrer to the complaint and in denying appellants’ motion for a new trial.
The complaint, among other things, substantially alleges: That the relators, Brown and Mills, are and have been freeholders and legal voters of Jackson county for five years last past, and signed the petition for the removal of said county seat presented to the board on the 3d day of June, 1895; that the individual defendánts were members of the board of commissioners of said county; that on the 3d day of June said board was convened in regular session and the petition for the removal of said county seat was presented, signed by the relators and sixty-two other freeholders and legal voters of the county, setting forth the following facts:
1st. That the county of Jackson contains an area of more than five hundred square miles, being five hundred and eight square miles, as shown by the record in the office of the Auditor of State.
2d. That each of the petitioners is a freeholder and legal voter of the county of Jackson.
3d. That they all desire a removal of the county seat from Brownstown to Seymour.
4th. That they desire an election to be held to determine that question.
That attached to the petition so presented was the affidavit of Ephraim Ahlbrand, deposing that he is a freeholder of Jackson county, Indiana; that the persons who signed the petition for the removal of the county seat to which the affidavit is attached are freeholders and legal voters of said county, and that the names attached to the petition are as in said complaint *479 set forth; that said petitioners at the same time and place filed with their petition the affidavit of the Auditor of State of Indiana., containing a copy of the record in his office, showing the number of square miles in said county, and that the number of square miles in said county was five hundred and eight; that certain of the petitioners had executed and filed a bond payable to the treasurer of the county in the sum of one thousand dollars, conditioned for the payment of the expense of the election, etc., which bond had been approved by the treasurer.
That said board received the petition, affidavit, and bond, and caused the same to be entered upon its records, but did not cause the affidavit of the Auditor of State to be entered at full length upon its records.
That said board refused to make an order for any special election as required by the statute, but did make and enter of record an order refusing the said petition and dismissing the same.
The complaint then alleges that under the statute of March 9,1895, it was the imperative duty of the board of commissioners to order such election, and that the commissioners had refused to perform such duty, and that, unless compelled by order of the court, they will not perform such duty.
Prayer for an alternative writ of mandate, requiring the board and the members thereof to make and enter an order for such election, and that upon the final hearing a peremptory writ of mandate issue. Upon the filing of this complaint an appearance for the defendants was entered, and the issuing of an alternative writ of mandate was waived.
The contentions of appellants’ learned counsel that the complaint is insufficient to entitle appellees to the relief demanded, briefly stated, are as follows: That the act of March 9,1895, supra, is special and local and *480 falls within the prohibition of section 22, article 4, of the constitution of this State, and is, therefore, void; that it violates said section 22 in details; that is to say, it is in conflict with the following specifications of this section: Number 3. In regard to practice in courts of justice. Number 10. In regard to county and township business. Number 12. Relative to the assessment and collection of taxes for county and township purposes; that it conflicts with section 1, article 3, of the constitution for the reason that it imposes administrative duties on the judge of the circuit court. The statute is also assailed as being violative of other constitutional provisions to which we will hereafter refer.
The first section of the act in controversy provides: “That at any regular session of the board of commissioners of any county in this State, having an area of more than five hundred square miles, fifty or more freeholders and legal voters of said county may present to said board of commissioners a petition in writing, setting forth the following facts:
“First. • The number of square miles the county mentioned in the petition contains, as shown by the record thereof on file in the office of the Auditor of State.
“Second. That said petitioners are freeholders and legal voters of said county.
“Third. That said petitioners desire the removal of the county seat of said county from the place where it is located, and that it be relocated at another place in said county.
“Fourth. The name of the city or town within the corporate limits of which said petitioners desire said county seat to be relocated.
“Fifth. That said petitioners desire an election to be held for the purpose of determining whether or not said county seat shall be relocated.”
*481 It is further provided that there shall be attached to the petition an affidavit of one or more freeholders of such county, stating that the persons who sign the petition are freeholders and legal voters of the county, and that such affidavit shall be conclusive evidence of the facts therein stated; also “the affidavit of the Auditor of State, containing a copy of the record in his office showing the number of square miles the county mentioned in the petition contains, which affidavit shall be conclusive evidence of the facts it contains.”
Section 2 requires the filing of a bond by the petitioners, or some of them, payable to the treasurer of the county, in the penalty of a thousand dollars, with freehold surety to the approval of the treasurer, conditioned for the payment Of expenses occasioned by the election.
Section 3 requires that upon the filing of the petition, and bond, the board shall cause the same to be entered at full length upon their records, and within three days after shall make an order for a special election in the various precincts in the county for the purpose of determining whether the county seat shall be relocated as prayed.
The remainder of section 3, with sections 4, 5, 6, 7, 8, and 9 provide the details and regulations of such election.
Section 5, in part, providing that if in any precinct the sentiment is so unanimous in favor of or against relocation that competent judges and clerks cannot be found therein,then persons competent to serve may be selected from other precincts and the right to vote is given to such persons in the precincts where they serve as such election officers.
Section 10 provides for an appraisement of the value of the court-house and jail at the present county seat.
*482 Section 11 provides for the order to be made by the board of commissioners in the event said special election shall result in the voters of the county having voted by a vote of three-fifths or more of the votes cast at the election in favor of the relocation of the county seat, and also that the voters of the township in which it is proposed to re-locate the county seat shall have, by a three-fifths vote or more, voted in favor of such relocation.
Section 12 requires the petitioners to procure a deed of conveyance of an acre of land for the court-house, and a quarter of an acre contiguous for the jail; and also plans and specifications for the erection of such court-house and jail, and deliver the same to the judge of the circuit court of the county. It further provides that the title of said sites, and the plans and specifications for said court-house and jail, shall be submitted to the judge of the circuit court, and if he finds the same satisfactory, he shall approve the same, such approval to be shown by an entry on the records of the circuit court, either in term or vacation.
Sections 13, 14, and 15 relate to the details in the erection of the court-house and jail, the accommodations of such buildings, and the cost thereof. ’
Section 16 provides for the removal of the records, etc., to the'new buildings upon their completion.
Section 17 provides as follows: “For the purpose of providing funds for the erection of said buildings, it is hereby made the duty of the township trustee of the ■township in which said new county seat is to be relocated, and in which said hew court-house and jail are to be built, to annually levy a special tax of one-half of one per cent, on each one hundred dollars of the taxable property of said township and incorporated towns and cities therein. Said tax shall be known as the court-house and jail tax, and shall be *483 levied annually by said trustee, as other township taxes are levied, until such annual levies and collections shall have produced a sufficient revenue to pay for the construction and completion of said courthouse and jail. No part of the taxes so collected shall be used for any purpose other than the purpose provided for in this act.”
Section 18 authorizes the issuing of township bonds in anticipation of such levy, and prescribes the form thereof.
Section 19 provides for the sale of such bonds and the payment of the proceeds to the treasurer of the county, to be by him paid over to the contractor.
Section 20 forbids the relocation, under the act., of any county seat within twenty miles of the boundary line of the State, or in any case where a sum exceeding $20,000 has been expended in the erection or repair of the court-house or jail within three years next before the 1st day of January, 1895. This same section provides that this act shall not repeal the act of' March 9,1889, touching the removal of county seats.
Section 21 provides that in case any officer or person required to perform any duty under this act fails, neglects, or refuses to perform the same, he may be compelled so to do by writ of mandate on the application of one or more of the petitioners in the circuit court of the county, and that for an intentional and willful failure or neglect to perform such duties he may be removed from office.
Section 22 provides that no part of the expense resulting from such relocation shall be a charge upon the county, nor shall the county assume any liability therefor, but the township in which such relocation is made shall be at the sole expense thereof, including the cost of the county buildings.
Section 23 makes the voting or offering to vote by an *484 elector, or the reception of the vote by any inspector, judge, or clerk, of any person not a legal voter, or the certification by any officer of the election of any fraudulent statement or result in reference thereto, a felony, subject to fine and imprisonment.
Section 24 makes any officer or person failing or refusing to promptly discharge any duties required by the provisions of this act subject to a penalty of $5,000.00, to be recovered in a civil action in any court of competent jurisdiction in the name of any one of the petitioners provided for in the first section of the act, etc., and further provides that the penalty when collected shall be paid into, the county treasury for the benefit of the common schools of such county.
An examination of the act in question fully discloses its special and local character, and evidently it was enacted for the sole purpose of bringing Jackson county, and no other county, within its provisions. The subject of the statute, however, is the relocation of county seats, and it is one over which, in the absence of a constitutional inhibition the legislature has plenary power and control. It has been repeatedly affirmed by the decisions of this conrt, and the question is now settled beyond controversy, that the subject-matter of the act in dispute is not one which falls within the interdiction of section 22, article 4, of the constitution which forbids the passage of local or special laws upon the subjects therein enumerated. Mode v. Beasley, 143 Ind. 306. Neither can we hold the law Invalid by reason of the provisions of section 23 of article 4, which requires that “in all other cases where a general law can be made applicable, all laws shall be general and of uniform operation throughout the state.”
The interpretation placed upon this section of the constitution has put at rest the question that its re *485 quirements do not prohibit the enactment of local laws upon subjects not forbidden by section 22, where a general law cannot be made applicable, and the determination of the question of applicability is one wholly within the province of the legislature. When this body has passed a local or special law, under the authority of section 23, and thereby decided in effect that a general law is not applicable in the particular instance, its decision in this respect is conclusive, and is not subject to be reviewed by the courts. State v. Kolsem, 130 Ind. 434; Wiley v. Corporation of Bluffton, 111 Ind. 152; Mode v. Beasley, supra, and authorities there cited.
The insistence that the act in question is antagonistic to the tenth specification of section 22 for the reason urged, that it regulates county and township business, is not tenable. The term “business,” as employed in this specification of section 22, has been interpreted by our decisions to mean or apply to the usual affairs of the County and township, the conduct of which engages the services of the officers of these respective municipal corporations. It has no reference whatever to an act which can be done in a particular case under the authority of a special law of the character of the one in question, the principal purpose and subject of which is the relocation of a county seat. An act providing for the removal of a county seat cannot be said to be a law regulating county business within thé meaning of the constitutional provision above mentioned. Mode v. Beasley, supra, and authorities there cited. Woods v. McCay, 144 Ind. 316.
Neither can the contention of appellants that this, statute violates the provision of section 22; which denies the legislature the power to regulate the practice in courts- of justice by a special law, be sustained. It is true that section 21, of the act in question, provides *486 that any officer or person required to perform any duty, under its provisions who “neglects, fails or refuses to perform the same,” may in an action instituted by one or more of petitioners be coerced in the performance of such duty by a writ of mandate, This provision does not attempt to regulate the practice in courts, but merely authorizes the persons designated to proceed in the circuit court of the county by an action to obtain a writ of mandate, to compel the officer, or person in default, to discharge his required duties. It gives the right to the petitioners to institute the action, but the practice therein is left to be controlled by the provisions of the civil code. Such incidental provisions in a statute of the character of the one in dispute, granting the right of appeal from the decision of boards of commissioners, or authorizing an action of mandate against such boards, or other officers, to compel the discharge of ministerial duties enjoined upon them, do not regulate the practice in courts within the meaning of the constitutional prohibition. Woods v. McCay, supra; Mode v. Beasley, supra.
Section 17 of the act provides for a levy annually of a special tax upon all of the taxable property of the township wherein the county seat is to be relocated, and in which the new county buildings are to be constructed, until a sufficient revenue is raised to pay the expense of their construction. Section 18 provides for the issuing of bonds in anticipation of the collection of the taxes levied. Section 19 provides for the sale of these bonds, and section 22 provides that the expenses and liabilities incident to the relocation of a county seat, under this act,, shall not become a charge against the county, but the whole shall be paid by the township in which the county seat is relocated. Counsel for appellants insist that these provisions of the act *487 render it invalid for the reason that it thereby violates specification 12 of section 22, supra, as being a local and special law for the assessment and collection of taxes for county and township purposes. They further contend that these provisions also conflict with section 1, article 10, of the constitution, requiring a uniform and equal rate of taxation, and are also repugnant to section 21 of the bill of rights, which provides that no man’s property shall be taken by law without just compensation, etc.
Neither of these propositions can be sustained. The entire power of the removal of a county seat being vested in the legislature, and it having the authority to exercise it by the enactment of a special law where a general one is not applicable, it has the right to provide in the act the special means or methods to be employed to carry into effect the principal subject upon which it has legislated. State v. Kolsem, supra.
It is evident that a county seat, relocated under the provisions of this act, would create the necessity for the erection at the new site of county buildings. In order to accomplish the construction of these, a revenue must be raised by means of taxation. The raising of such a revenue is therefore, a matter necessarily incident to and connected with the principal subject. As a method of raising the money to defray the expenses of the new buildings the legislature saw fit to create a special taxing district out of the township within which the county seat was to be relocated, and provide for a levy of a special tax upon the property therein for the purpose of raising funds to pay the expenses of the construction of such public buildings. In providing for the levy of this tax upon the township in which the county seat was to be relocated, the legislature proceeded upon the theory, and took into consideration the fact, that those persons residing and *488 holding property within such township would derive special benefits and advantages as a result of the seat of justice being located therein. That the legislature had the right and power to create this special taxing district in the manner and for the particular purpose it did is settled by the authorities. Gilson v. Board, 128 Ind. 65; County of Livingston v. Darlington, 101 U. S. 407; United States v. Memphis, 97 U. S. 284; In re Medera Irr. Dist., 92 Cal. 296, 28 Pac. 272, 675; Cooley on Taxation (2d ed.), 153, 155; Marks v. Purdue University, 37 Ind. 155; Cooley on Taxation (2d ed.), 166; Kirby v. Shaw, 19 Pa. St. 258; Board, etc., v. Harrell, post, 500, and authorities there cited.
The special benefits and conveniences which will result to those residing within the immediate locality in which a county seat is located and maintained by reason of the enhancement of the value of their property, are facts which are well recognized by all and generally serve to stimulate the inhabitants of such localities in their earnest efforts to secure the location of the county seat in their own vicinity, and no doubt it was the knowledge of this fact which prompted the legislature in requiring the inhabitants of the particular township to bear the burden of this special tax for the purpose designated. This court in Marks v. Purdue University, supra, recognized the doctrine that the law making power may impose the expense of a public improvement upon a particular locality which will receive benefits derived therefrom. The power of taxation is vested in the legislature. It has the right to provide for the rate to be assessed and the locality or district upon which the taxes are to be imposed. Courts cannot interfere with such legislative acts upon the ground that they impose oppressive taxes upon the taxpáyers, so long as the legislature keeps within the limits of its authority and violates no express provi *489 sion of the constitution. Cooley on Taxation (2d ed.), p. 5.
In Kirby v. Shaw, supra, an act of the legislature of Pennsylvania was involved which authorized the sum of $500.00 to be annually levied as a tax for a certain period upon the borough of Towonda, in addition to the usual levies for county and other purposes, to defray the expenses of a county court-house and jail erected in said borough. This tax was resisted as an unequal burden, as between the taxpayers of the borough and those of the county. The law was sustained, the court holding that it could not interpose and set it aside upon the grounds that the tax was unequal and unjust. The court in that decision referred to the question of special benefits that were conferred upon the people living within this particular town by reason of the county seat being maintained therein, and it was said that for this reason they had no right to complain of the additional taxes which the legislature had imposed upon their property. The restriction of the constitution upon the passage of local or special laws for the assessment and collection of taxes for county and township purposes, was intended to apply to such as were levied to raise revenue for the usual or general purposes of the county or township, and has no reference to taxes or assessments levied, as provided for under the act in controversy, upon some, special taxing district, for some special public improvement or purpose, which will result in special benefits to the persons or property within such district. See Law v. Madison, etc., Turnpike Co., 30 Ind. 77. On no view of the question can it be asserted that the statute conflicts with the fundamental law for the reason that it creates a special district out of the township wherein the new county seat is to be located, and confines the assessment of the tax to construct the *490 new buildings to this particular locality. Cooley on Taxation, p. 149.
The legislature in its wisdom having authorized the entire tax for the construction of these new buildings to be assessed against, the taxable property of those whom in reason it considered would be immediately benefited by the relocation of the county seat, we are aware of no provisions of our constitution, under the circumstances, which would deny it the power to place the whole burden where it deemed it proper to rest.
Under the -provisions of the statute, the tax provided to be levied is uniform and equal throughout the particular district upon which it is authorized to be assessed, and in this respect the law responds to the requirements of the constitution. Bright v. McCullough, 27 Ind. 223; State Bank of Indiana v. City of New Albany, 11 Ind. 139; Wiley v. Owens, 39 Ind. 249; Loftin v. Citizens' Nat. Bank, 85 Ind. 341.
The prohibition of the appropriation of private property, under section 21 of our bill of rights, refers to the taking of such property by the State under the right of eminent domain, and in no sense does it extend to the raising of a revenue for public use by the means of legitimate taxation. City of Aurora v. West, 9 Ind. 74; Cooley’s Const. Lim. (6th ed.), p. 613.
There is really nothing in the contention of appellants that the act is repugnant to this feature of the constitution. Neither do we think that the provisions of section 12 can be successfully questioned on the ground that they are within the inhibition of article 3 of the constitution. It is true that these provisions designate certain duties which the judge of the circuit court is authorized to perform, which partake more of a ministerial than a judicial nature. That the legislature, however, may clothe judicial officers with such powers, as it has under this statute, has been ex *491 pressly decided by this court in the case of City of Terre Haute v. Evansville, etc., R. R. Co. (Ind. Sup.), 46 N. E. 77. Under the law in the case at bar the legislature did not attempt, as it did under the law involved in Ex parte Griffiths, 118 Ind. 83, to cast upon and require the judiciary to perform duties which were essentially a part of those belonging to another official of the character of the Reporter of thfe Supreme Court. While we still adhere to the rule asserted in that case, upon the real point involved, still that decision cannot be so extended as to deny the right of the legislature to authorize the performance, by the judge of the circuit court, of such duties of the nature as are designated in section 12. Objections are made to that part of section 5 which grants the right to persons, selected from other precincts to serve as judges and clerks, to vote in the precinct where they serve as such officers. Also to part of section 8 which declares it a misdemeanor upon the part of an election officer to violate the provisions of the act, and likewise to the provisions of section 23 which define a felony, and those of section 24 which render defaulting officers liable to a penalty for the nondischarge of their duties. The validity of these provisions are assailed; but we dismiss these questions without consideration and do not pass upon the constitutional validity of these features of the act; for, were the invalidity conceded, the result would be merely to eliminate them from the act, leaving the remainder of the law complete within itself and capable of being executed so as to carry out the essential purpose of the legislature. These provisions are not the material parts of the statute, and their alleged invalidity affords no excuse to the appellants, as public officers, for refusing to yield their obedience to the other parts of the act, which do not depend upon those claimed to be void. When these sections of the *492 act are called in question by persons affected thereby, their validity may then be properly reviewed.
It is next contended that the complaint is bad because: First, it shows that the appellees .have a remedy by appeal; second, because the power conferred upon the board of commissioners under the provisions of this statute is judicial; third, that it fails to negative that part of section 20 which excepts from the provisions of the act counties where a sum exceeding $20,000 has been expended in the erection or repair of the court house or jail of the county within, three years prior to January 1st, 1895; fourth, that the legislature had no power to -make the affidavit of the Auditor of State conclusive evidence of the facts therein contained. The entire scope of this act clearly indicates that it was the intent and purpose of the legislature to make the action of the board of commissioners, in considering the petition and in ordering the special election, purely ministerial, and not judicial. The affidavits required to be attached to, and accompany the petition, were declared to be conclusive evidence of the truth of the facts required to warrant the commissioners in ordering the election. Nothing in the nature of an adversary proceeding was contemplated. When the petition, affidavits, and bond were filed, as provided by the act, which requirements the complaint avers were complied with, the duty of the board, under the statute, was so plain and imperative that no element of discretion can be said to enter into its performance; and it is manifest, also, that under its provisions the board was not invested with judicial functions. Board, etc., v. Davis, 136 Ind. 503; Board, etc., v. Heaston, 144 Ind. 583. The proceeding was a special one, having for its object the relocation of a county seat, being a matter over which the legislature had full control. It was based upon a special *493 statute which gave no express right of appeal, and that no appeal could be maintained under the circumstances has been settled by the decisions of this court. Bosley v. Ackelmire, 39 Ind. 536; Board, etc., v. Smith, 40 Ind. 61; Cole v. Howard, 56 Ind. 330. A duty to be performed is none the less ministerial because the person who is required to perform it may have to satisfy himself of the existence of a state of facts under which he is given his right or warrant to perform the required duty. Flournoy v. City of Jeffersonville, 17 Ind. 169; Wilkins v. State, 113 Ind. 514; State v. Johnson, 105 Ind. 463. But were we to concede the insistence that the board, in denying the prayer of the petition, was in the exercise of a judicial duty, it would not necessarily result that the petitioners were entitled to an appeal to the circuit court. The statute expressly awarded to them the right to institute an action for a mandate, to enforce the board to perform the duty enjoined upon it, and this, we are of the opinion, must at least be regarded as an implied denial of the right of appeal. The rule is well settled that where the law either expressly or impliedly forbids an appeal from the board of commissioners, then none will lie. Farley v. Board, etc., 126 Ind. 468; Board v. Davis, supra. It is evident, therefore, that appellees were not entitled to an appeal, but were entitled to prosecute an action for a mandate as pointed out in section 21, and the objections of appellants to the complaint upon this ground cannot be sustained. The complaint was sufficient without averring that f20,000 had not been expended in the erection or repair .of the court-house or jail within three years prior to January 1st, 1895. This exception is found in a section subsequent to the one which provides what facts the petition must contain in order to invoke the action of the board. It was not necessary for the complaint to neg *494 ative the existence of this fact, as it was a matter of defense or excuse to be shown by the board (the appellants) in justification of their action in refusing to yield obedience to the law. The burden rested upon appellants to prove this expenditure in order to vindicate their action in refusing to grant the prayer of the petition. Miller v. Shields, 124 Ind. 166, and authorities there cited.
The affidavit of the Auditor of State contained a copy of the surveys of Jackson county, on file in his office, and he stated in his affidavit that said record showed that the county contained an area of more than five hundred square miles, to-wit: five hundred and eight square miles. This statement the statute made conclusive evidence to the board of that fact. That the legislature had the power to make the facts contained in this affidavit, under the circumstances, conclusive evidence, we think cannot be successfully controverted. The commissioners , as we have seen, in ordering the election, were in the discharge of a ministerial duty in a matter or subject over which the legislature had full power and control. The proceeding was not an action involving any personal or individual interest or rights which in any way would be impaired or precluded by reason of certain facts being made conclusive evidence. The primary and sole purpose of the proceeding instituted by the filing of the petition before the board was to secure the holding of an election to enable the voters of the county to determine for themselves the question of removal of their county seat. ' It was right and proper and fully within the power of the legislature to adopt, as it did, some means or standard which would be conclusive evidence of the required area of the county, and thereby, without further inquiry upon that question, authorize the board to order the special election.
*495 The legislature saw fit to have the authority or jurisdiction of the board over the matter conclusively established by the sworn statement of the Auditor of' State. This infringed upon no rights of the commissioners, as such officials, and they are in no attitude to complain of this provision of the law. Hunter v. Burnsville, etc., Co., 56 Ind. 213.
In is finally urged that the evidence given in the-circuit court is not sufficient to establish the area of Jackson county, and that the court erred in permitting Mr. Bingham to testify what the area of the county was as shown by a copy of the record on file in the office of the Auditor of State. Courts are required to, and do take judicial notice of the area of an established county, and also of its limits and boundaries. Board, etc., v. Spitler, 13 Ind. 235; Mode v. Beasley, 143 Ind. 324; Buckinghouse v. Greeg, 19 Ind. 401; Mossman v. Forrest, 27 Ind. 233; Turbeville v. State, 42 Ind. 490; Bannister v. Ditching Ass’n, 52 Ind. 183; Murphy v. Hendricks, 57 Ind. 595; Dawson v. James, 64 Ind 166; Williams v. State, 64 Ind. 555; Burton v. Ferguson, 69 Ind. 489; Peck v. Sims, 120 Ind. 348; Hays v. State, 8 Ind. 425; Glenn v. Porter, 49 Ind. 500; Carr v. McCampbell, 61 Ind. 97; State v. Gramelspacher, 126 Ind. 402.
The lower court judicially knew, and so does this court, that Jackson county contains more than five hundred square miles; hence no available error can be predicated upon the testimony of Mr. Bingham upon this question, nor was it incumbent upon the appellees to prove that the number of square miles in Jackson county was in excess of five hundred, for of this fact the court had judicial knowledge.
We have considered all of the material questions involved in this appeal, and are compelled to sustain the statute in dispute in all of its essential features, and the judgment of the lower court is affirmed.