BOARD OF COMMISSIONERS OF JACKSON COUNTY ET AL.
*v*. THE STATE EX REL. SHIELDS ET AL.

[No. 18,928. Filed December 18, 1900.]

LAW OF CASE.—*Counties.*—*Removal of County Seat.*—*Taxation.*—A decision of the Supreme Court in an appeal from a judgment requiring the board of commissioners to order an election under a special act for the relocation of a county seat, holding the provisions of the act for raising revenue valid, is not the law of a new and independent action brought to compel the commissioners to order another election under such act, and its validity as a precedent is subject to review on appeal in such subsequent action. *p. 607.*

TAXATION.— *Constitutional Law.* —*Counties.* — *Removal of County Seats.*—The provision of the act of 1895 (Acts 1895, p. 217) for the relocation of the county seat of Jackson county requiring the levy and collection of a special tax in the township in which the county seat should be located, to provide funds for erection of the buildings, is in conflict with the general law of the State pertaining to counties, and is in contravention of article 4, §2 of the Constitution which provides that the General Assembly shall not pass local or special laws "for the assessment and collection of taxes for State, county, or road purposes," and also violates article 10, §1 of the Constitution, requiring uniformity and equality of taxation. Overruling, in part, *Board, etc.*, v. *State, ex rel.*, 147 Ind. 476. *pp. 605-610.*

From the Monroe Circuit Court.   *Reversed.*

*B. H. Burrell, D. A. Kochenour, W. H. Endebrock, Frank Branaman, J. F. Applewhite, Ralph Applewhite, H. C. Duncan* and *I. C. Batman,* for appellant.

*O. H. Montgomery, J. H. Shea, C. E. Wood, J. B. Wilson, B. K. Elliott, W. F. Elliott* and *F. L. Littleton,* for appellee.

BAKER, J.—In 1895 the legislature passed a special act for the relocation of the county seat of Jackson county under certain procedure therein provided.   Acts 1895 p. 217.   In conformity to the provisions of this act, a petition was filed with the board of commissioners, asking that an election be ordered to enable the voters to decide upon the question of relocation.   The board refused to order an election.   The petitioners began proceedings in mandamus. The circuit court, on final hearing, issued a peremptory writ.   On appeal to this court, the judgment was affirmed. *Board* v. *State, ex rel.,* 147 Ind. 476.   In obedience to the judgment, the board ordered an election.   The voters decided against a relocation.   A second petition was thereupon filed with the board, in which the proposed relocation was the same as that described in the first petition.   The board refused to order a second election.   This action was then begun in the Jackson Circuit Court to obtain a peremptory writ of mandamus against the board and the members thereof, commanding them to order a second election.   The venue was changed to the Monroe Circuit Court.   Demurrer to the complaint and alternative writ was overruled. Two paragraphs of affirmative answer were filed.   The gist of the first was that the first election exhausted the privilege granted by the special act; of the second, that the board was not and could not lawfully be in regular session between the filing of the complaint and the return day to the alternative writ, and that the special act forbade them to order an election at a called session.   Demurrers having been sus-

tained to these answers, and the defendants having declined to plead further, final judgment was rendered. The errors assigned involve the sufficiency of the complaint and alternative writ, and of each paragraph of answer.

The principal question argued in reference to the sufficiency of the complaint is the constitutionality of the special act. The same points are presented that were considered in *Board* v. *State, ex rel.*, 147 Ind. 476, and decided against appellants. Among the objections to the act, then urged and now repeated, was one to the effect that sections seventeen, eighteen, nineteen and twenty-two violate section one, article ten, of our Constitution, which requires uniformity and equality in taxation, section twenty-two, article four, which forbids special or local acts in certain cases, and section twenty-one, article one, which provides that no man's property shall be taken by law without just compensation. Section seventeen of the act reads as follows: "For the purpose of providing funds for the erection of said buildings, it is hereby made the duty of the township trustee of the township in which said new county seat is to be relocated, and in which said new court-house and jail is to be built, to annually levy a special tax of one-half of one per cent. on each $100 of taxable property of said township and incorporated towns and cities therein. Said tax shall be known as the court-house and jail tax, and shall be levied annually by said trustee, as other township taxes are levied, until such annual levies and collections shall have produced a sufficient revenue to pay for the construction and completion of said court-house and jail. No part of the taxes so collected shall be used for any purpose other than the purpose provided for in this act." Section eighteen provides for the issuance of the bonds of the township in anticipation of the receipts from the tax. Section nineteen authorizes the sale of these bonds. Section twenty-two requires that the charges, expenses and liabilities consequent upon the relocation of the county seat and the construction of the new county buildings

shall not, in whole or in part, become a charge against the county, and that the county shall not assume any liability on that account, but that the whole expense shall be paid by the township.

In *Board* v. *State, ex rel.,* 147 Ind. 476, these provisions were held to be valid on the basis that it was within the legislative discretion to create a special taxing district out of the township, to decide that the special public improvement would result in special benefits to the persons or property within such special district, to decide that the special benefits to the district as a whole equaled the total cost of the improvement, and to require each $100 of taxable property in the district to bear an equal part of the total cost irrespective of the amount of special benefits actually received.

That decision is not the law of this case, for this is a new and independent action; and its validity as a precedent is subject to review, for it is not a rule of property. The error was there committed of assuming that the contribution exacted by section seventeen from the taxpayers of the township was a "special assessment for a local improvement" and not a "general tax". This exaction has none of the characteristics of a special assessment for a local improvement. The statute does not pretend to make the special benefits conferred upon certain parcels of real estate by reason of being adjacent to or connected with the proposed improvement the measure of the exaction, nor to give the owners of such real estate notice and an opportunity to contest the amount of the assessment, as was found to be the case in *Adams* v. *City of Shelbyville,* 154 Ind. 467; and *City of Indianapolis* v. *Holt, ante,* 222. "One-half of one per cent. on each $100 of the taxable property of said township and incorporated towns and cities therein" must be paid annually by each owner of taxables, real or personal. The tenant on the remotest farm in the township must pay the same *ad valorem* tax on his chattels that is paid by the owners of the lots surrounding the court-house grounds.

In form, the tax is a general tax. It "shall be levied annually as other taxes are levied". In nature, the tax is a general tax. The purpose is exclusively a public purpose. But the exaction under section seventeen can not be upheld as a general tax for two reasons:

(1) The legislature, by a general law in reference to the business and duties of counties, enacted under the present Constitution and in force since June 17, 1852, required each county as a governmental subdivision of the State to erect and maintain a court-house and jail within the limits of the county. §§13, 16, 17, 1 R. S. 1852, §§5745, 5748, 5749 R. S. 1881 and Horner 1897, §§7830, 7833, 7834 Burns 1894. Conceding that the legislature might have made it the duty of the State to provide court-houses and jails throughout the State, or the duty of each township as a governmental subdivision to construct and keep in repair a court-house and jail within its limits, it is to be noted (1) that the legislature laid the duty upon each county; (2) that a right or duty of any township or any county as a governmental subdivision can not be created by a special law, and (3) that a tax for a State, county or township purpose can not be imposed or authorized under a special law (article 4, section 22, of the Constitution). Conceding that as a general rule the legislature may adopt any means it sees fit to achieve a lawful purpose, and conceding that the general purpose of the removal of a particular county seat may be accomplished under a special act, it does not follow that the legislature may effectuate that end by means which the Constitution forbids to be operative except under a general law.

(2) It may be laid down as a general proposition that, under a constitutional limitation like that embodied in article 10, section 1, of the Constitution of this State, requiring uniformity and equality of taxation, a tax for a State purpose must be uniform and equal throughout the State, a tax for a county purpose must be uniform and

equal throughout the county, and a tax for a township pur-
pose must be uniform and equal throughout the township.
Cooley on Taxation (2nd ed.), 144; *Wasson* v. *Commission-
ers,* 49 Ohio St. 622, 32 N. E. 472, 17 L. R. A. 795; *Hub-
bard* v. *Fitzsimmons,* 57 Ohio St. 436, 49 N. E. 477;
*Bright* v. *McCullough,* 27 Ind. 223, 230; *Loftin* v. *Citizens
Nat. Bank,* 85 Ind. 341, 345, 346; *Mayor of Mobile* v. *Dar-
gan,* 45 Ala. 310, 320; *Hutchinson* v. *Ozark Land Co.,* 57
Ark. 554, 557, 22 S. W. 173; *Prim* v. *Belleville,* 59 Ill. 142,
144; *Dyer* v. *Farmington Village,* 70 Me. 515, 522-524;
*People* v. *Salem,* 20 Mich. 452, 474; *Sanborn* v. *Commis-
sioners,* 9 Minn. 273, 278; *Murray* v. *Lehman,* 61 Miss.
283, 286; *Turner* v. *Althaus,* 6 Neb. 54; *State* v. *Collins,*
43 N. J. L. 562, 565; *Gilman* v. *City of Sheboygan,* 2
Black 510, 517, 17 L. ed. 305; *Pine Grove Tp.* v. *Talcott,*
19 Wall. 666, 675, 22 L. ed. 227. It is unnecessary to exam-
ine the facts of these cases and express any approval or dis-
approval of the application made of the general principle,
for the cases are here cited only as supportive of the general
rule above stated. It is also unnecessary to analyze the cases
cited by appellees from other jurisdictions in which the leg-
islatures had declared that taxes upon townships or cities for
the construction of county buildings were levied for town-
ship or city purposes, or to distinguish or criticise the cases
in this jurisdiction in which the legislature had declared that
bonuses by counties to secure the location of State institu-
tions and bonuses by townships to secure the location of rail-
roads could be raised by taxes that were respectively for
county and township purposes, for in this case it is found
that there has been maintained on the statute books since
1852 a general law by which the legislature exercised its dis-
cretion by making the erection and maintenance of court-
houses and jails the duty of the counties, and it is a maxim
in constitutional law that "the legislature may suspend the
operation of the general laws of the State, but when it does

so the suspension must be general and can not be made for individual cases or for particular localities". Cooley's Const. Lim. (6th ed.) 482, and cases cited in note two. A special act requiring Marion county to construct and forever maintain the Capitol and other State buildings within the county, if the general laws or the Constitution of the State required them to be erected and kept in repair by the State, would be an infraction of the Constitution no grosser than that made by the sections in question in the present act.

If the requirement that the total cost be borne by the township were stricken out, it might be said, if it were not for section twenty-two, that the proceedings could be had to relocate the county seat and construct new buildings at the expense of the county, since the county is to own the new ground and buildings. But section twenty-two explicitly forbids this, and so the act is left without any possible means provided for its fulfilment.

As the complaint is bad, it is unnecessary to examine the sufficiency of the answers.

Judgment reversed, with directions to sustain the demurrer to the complaint.

Dowling, C. J., and Monks J., concur in the reversal.

Jordan, J., dissents.

## CONCURRING OPINION.

Dowling, C. J., and Monks, J., concur in the reversal only upon the ground that section seventeen of the act under consideration is invalid because in violation of clause twelve, section twenty-two, article four of the Constitution. It is conceded that said act is local, and it was so decided in *Board, etc., v. State,* 147 Ind. 476.

Said section seventeen provides for raising the money to build the new court-house and jail, by annually levying and collecting a special tax on all taxable property in the township to which the county seat is removed. This is clearly in

violation of said clause of the Constitution, *supra,* which provides that the General Assembly shall not pass local or special laws, "For the assessment and collection of taxes for State, county, township, or road purposes." It is true that the General Assembly has the power to pass local or special laws for the removal of county seats. *Mode* v. *Beasley,* 143 Ind. 306. But this does not authorize the enactment of a provision in such local or special laws that violates any part of the Constitution.

And Dowling, C. J., concurs in the reversal for the additional reason that the erection of a court-house and jail is in no sense a township purpose.