MAYOR AND ALDERMEN. OF CITY OF KNOXVILLE *v.* PARK
CITY.

(*Knoxville.*   September Term, 1914.)

1. **TAXATION.**   **Exemptions.**   **Municipal property.**   **"Public purpose."**

Under Const., art. 2, sec. 28, authorizing the legislature to exempt from taxation such property as may be held by the State, counties, cities, or towns and used exclusively for public or corporate purposes, and Acts 1907, ch. 602, sec. 1, exempting from taxation all property of a city that is used exclusively for public or municipal corporation purposes, that portion of a municipal waterworks plant, which was exclusively used to supply for profit to the owning city water to another city within whose limits it is located, is not used for a "public purpose," and is therefore taxable by the other city.   (*Post, pp.* 630-634.)

Constitution cited and construed:   Art. 2, sec. 28.

Acts cited and construed: Acts 1907, ch. 602, sec. 1; Acts 1907, ch. 207; Acts 1903, ch. 153; Acts 1909, ch. 344.

Cases cited and approved:   Wayland v. Middlesex County, 4 Gray, 500; Jackson County v. State, 155 Ind., 604; Farwell v. City of Seattle, 43 Wash., 141; Rehill v. East Newark, 73 N. J. Law, 220; Omaha Water Co. v. Omaha, 162 Fed., 225.

Cases cited and distinguished:   Dyer v. Newport, 123 Ky., 203; Com. v. Covington, 128 Ky., 36; South Pasadena v. Pasadena Land & Water Co., 152 Cal., 579.

2. **TAXATION.**   **Exemptions.**   **Municipal property.**   **"Public purpose."**

The fact that the furnishing of water to the inhabitants of the city is a "public purpose" of that city does not make it, either directly or incidentally, a "public purpose" of the city owning the system.   (*Post, pp.* 634-642.)

Knoxville v. Park City.

Cases cited and approved: West Hartford v. Board of Water Comrs., 44 Conn., 360; People ex rel. v. Assessors of Brooklyn, 111 N. Y., 505; Smith v. Nashville, 88 Tenn., 464.

Cases cited and distinguished: Stiles v. Newport, 76 Vt., 154; Swanton v. Highgate, 81 Vt., 152; City of Omaha v. Douglas County, 148 N. W., 938.

## FROM KNOX.

Appeal from the Chancery Court of Knox County.— W. D. WRIGHT, Judge.

SHIELDS & CATES and W. E. DRUMMOND, for appellant.

W. T. KENNERLY, NOBLE SMITHSON and J. PIKE POWERS, JR., for appellee.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

The mayor and aldermen of Knoxville filed its bill of complaint against Park City, another municipal corporation, seeking an injunction against the latter to inhibit the collection of an *ad valorem* tax for the year 1910, assessed against that portion of the water plant of complainant city located within the corporate limits of the defendant city, and also to enjoin the collection of a privilege tax claimed to be due for the exercise of the privilege of operating a waterworks system in Park City.

The bill of complaint proceeds upon the theory that the property attempted to be taxed is exempt because owned by a municipal corporation; while it is the contention of defendant city that such portion of the plant of complainant which is situated within the boundaries of Park City is not used exclusively for public or corporation purposes of the complainant municipality, but is used in serving Park City for profit.

It appears that the west boundary line of Park City is almost contiguous to the east boundary line of the city of Knoxville for a distance of about one mile. There intervenes what is described as a neutral strip, about 300 feet wide, on which factories are located.

Prior to 1909 both of the cities were served by a private water corporation, the Knoxville Water Company, the plant of which was located partially in the territory of each of them. Under legislation later noted, the city of Knoxville in 1909 acquired the plant of this company, including that part situated in Park City, and assumed the contract then in existence between the company and Park City, and has since operated its plant there.

The proof establishes that the plant of complainant city lying within the territorial limits of Park City is, as to use, independent of and not necessary to that part of the system which is in Knoxville and there in use for that city and its inhabitants. No mains for the Knoxville supply are laid in Park City.

Since its purchase of the plant of the Knoxville Water Company, the city of Knoxville has charged

the inhabitants of Park City for water at rates which are twenty per cent. higher than its rates to its own inhabitants; and a profit is made from the Park City plant. A portion of these profits has been used to extend water lines into and to serve a third incorporated town, Lonsdale, which is not adjacent to the city of Knoxville.

Section 28 of article 2 of the constitution of this State provides:

"All property, real, personal or mixed, shall be taxed, but the legislature may except such as may be held by the State, by counties, cities, or towns, and used exclusively for public or corporation purposes."

Section 1 of chapter 602 of the Acts of 1907 provides:

"That all property, real, personal and mixed shall be assessed for taxation for State, county and municipal purposes, except such as is declared exempt in the next section.

"Sec. 2. That the property herein enumerated and none other shall be exempt from taxation: All property of . . . any incorporated city, town, or taxing district in the State that is used exclusively for public or municipal corporation purposes."

Complainant city was incorporated under Acts of 1907, ch. 207, which was substantially a re-enactment of its former charter. By its present charter it is authorized to provide the city of Knoxville with water by a system of waterworks to be established within or beyond the boundaries of the city.

Was the city of Knoxville, under the constitutional and accordant statutory test, employing its plant in Park City "exclusively for public or corporation purposes?"

The true test to be applied is whether the municipality sought to be subjected to taxation is engaged in the administration of the property in question for a public purpose; that is, for governmental purposes. It is the character of the use to which the property is put, and not so much the person who owns or administers it, or the place where the property may be situate, that is determinative of this question of exemption from taxation.

We may resort for ascertainment of the meaning of the phrase "public purpose" to the law of eminent domain, which furnishes an analogy not complete, yet fairly apt. 1 Cooley, Taxation (3 Ed.), 192; *Wayland v. Middlesex County,* 4 Gray (Mass.), 500. It cannot be contended that the city of Knoxville would have power, under the law of eminent domain, at least in the absence of express and specific grant, to condemn property for the laying of a waterworks system in Park City for the service of the latter, since it would not be a public purpose to be served by the former municipality to supply the latter with a water supply. We doubt whether any reported case can be cited which shows even an attempt at the assertion of such power, not to mention its being sustained.

If we resort for further analogy to the power to tax for a "public purpose," we find authority denying

that the city of Knoxville could validly levy taxes on its own inhabitants and property holders for the immediate purpose of erecting a water distribution plant in another municipality to serve the latter. 3 Dillon, Mun. Corp. (5 Ed.), sec. 1300.

In *Dyer* v. *Newport,* 123 Ky., 203, 94 S. W., 25, it appeared that the city of Newport had taken the franchise to install a water system in, and to furnish for a period of twenty years a water supply to, Clifton, a municipality lying alongside Newport. A citizen and taxpayer of Newport brought suit to enjoin the execution of the contract on the ground that it was *ultra vires.* The court sustained this contention, saying:

"There is no express and no implied grant of power to Newport to engage in such enterprise beyond its corporate limits; nor has it the right, therefore, to levy and collect taxes for such purpose. The contract in this suit, if valid, would impose the obligation on the city to put in all necessary water mains, and fire hydrants in Clifton at the expense of the city of Newport. To raise the money to do this, it would have to impose a tax on the people and property liable to city taxes, or appropriate money out of the city treasury put there by taxation. In either event, it is equivalent to the imposition of a tax on the people and property of Newport to install and maintain water facilities in the municipality of Clifton. And if the contract with Clifton should prove unprofitable to Newport, and the latter should lose money in the enterprise, the loss would have to be made up by the

latter by collecting funds to defray it by taxes levied on the property in Newport. Nor could Newport acquire a franchise by purchase, or otherwise, in the absence of express legislative authority, to operate a waterworks system in and for the benefit of another municipality.''

See, also, *Jackson County* v. *State,* 155 Ind., 604, 58 N. E., 1037.

The court of appeals of Kentucky, in the later case of *Com.* v. *Covington,* 128 Ky., 36, 107 S. W., 231, 14 L. R. A. (N. S.), 1214, held that the fact that water was furnished for compensation to inhabitants of its suburbs, without its or any corporate limits, does not alter the public purpose or use of its water system so as to make it subject to taxation. But the court took care to distinguish the case it had in hand from the one we have under investigation, saying:

''We do not mean that a city may enter upon the business of maintaining a waterworks system for other cities or towns, but only that the fact that it incidentally furnishes water to a considerable number of persons in proximity to the city, without injury to the rights of the city, does not alter the public character or use of the property, or make it subject to taxation.''

The ruling in *Com.* v. *Covington,* supra, is in harmony with the decision of many courts to the effect that the fact that water is furnished to inhabitants of unincorporated suburbs is a mere incident to and not destructive of the public use.

It was held in *Farwell* v. *City of Seattle*, 43 Wash., 141, 86 Pac., 217, 10 Ann. Cas., 130, that in the absence of express authority, conferred by statute in clear terms, a city has no power to extend its water system into another municipality for the purpose of furnishing the latter with a water supply, and that such power could not be drawn from a statute giving the city of Seattle power to furnish "such city or town and the inhabitants thereof and any other persons with an ample supply of water." The expenditure of municipal funds in such extension was enjoined at the instance of a citizen and taxpayer. See, also, *Rehill* v. *East Newark*, 73 N. J. Law, 220, 63 Atl., 81.

In the pending case we need not decide whether the language of the charter of Knoxville is broad enough to support the power claimed for that municipality in this respect.

It may be, however, that the city of Knoxville has the power under Acts 1903, ch. 153, and Acts 1909, ch. 344, to acquire, hold, and operate the water system in Park City; the first being an enabling act by which complainant city was authorized to issue $750,000 of bonds for the purpose of "acquiring, owning and operating a system of waterworks for said city and adjacent territory, either by purchase or construction," and the later act (Acts 1909, ch. 344) providing for an increase of the bond issue for the specific purpose of buying the existing plant of the Knoxville Water Company. This, under the doctrine of the cases of *Omaha Water Co.* v. *Omaha;* 162 Fed., 225,

89 C. C. A., 205, 15 Ann. Cas., 498, and *South Pasa-dena* v. *Pasadena Land & Water Co.*, 152 Cal., 579, 93 Pac., 490. If this be conceded, it remains for inquiry whether that power was one that manifested a public corporate purpose or one that was a demonstration of a mere proprietary right—a business power inhering in the city of Knoxville as a body corporate.

In the case last cited, the supreme court of California clearly defined the nature of the power thus exercised by the municipality owning and operating such a plant. The city of Pasadena under its charter had power to construct and maintain waterworks "for supplying the city and its inhabitants with water, and the right to supply water to persons who live out of the city." The defendant company was a private corporation engaged in supplying under contracts Pasadena and South Pasadena, distinct municipalities, with water, and the suit was to enjoin it from selling its plant to the city of Pasadena. The court had to deal with the relations that would exist between the two municipalities in event the injunction were denied. After referring to the power of South Pasadena over the private water company, the court said:

"Necessarily it has this power (of regulation) as against another city engaged in supplying such water, as well as when an individual or water corporation does so. It is suggested that the two cities each represent the sovereign power and would have equal authority in all municipal affairs, that a conflict would ensue, and that such consequences cannot be consid-

ered as intended, unless the intention is expressly and unmistakably declared. In this connection the rule is invoked that there cannot be two municipalities exercising the same powers at the same time within the same territory. But the two cities would not be of equal authority with respect to the use of water in South Pasadena, in such case. South Pasadena would have the power above stated, under the constitution, and Pasadena, so far as that service is concerned, would be subject to those powers, to the same extent as the Pasadena Land & Water Company is now subject thereto. In the carrying on of the water service to the people of South Pasadena, the city of Pasadena will not be acting in its political, public, or governmental capacity as an agent of the sovereign power equal in all respects to the city within which it operates. . . . Having taken over the whole system subject to the burden of supplying a part of the water to inhabitants of South Pasadena, the city of Pasadena will have no greater rights or powers, respecting that part of the service, than its grantor previously had. . . . The powers of the two cities in regard to this water service will be separate and distinct; one will be subordinate to the other, and hence there will not be two cities exercising the same powers in the same territory at the same time; South Pasadena, within its own limits, will be the sole representative of sovereignty in the fixing of rates, and in the supervision of the streets; and Pasadena will be subject thereto, as a private person.''

By parity of reasoning the city of Knoxville is not exercising a public or political power in Park City and is subject to the paramountcy of Park City, as the sole representative of sovereignty in respect of the taxing power. As the successor of the Knoxville Water Company, the first-named city will be deemed to stand in the plight of that private corporation as to exemption from taxation.

It is difficult to conceive how the city of Knoxville has any public or corporate purpose to serve within the corporate limits of Park City. All municipal purposes therein are those of Park City, created by legislative act to exercise them. The furnishing of a water supply for itself and its inhabitants is its municipal purpose and cannot be Knoxville's.

Nor may it logically be conceived that the city of Knoxville serves even incidentally its own corporate public purpose by means of the Park City system. What is the primary "public purpose" of Park City may not be an incidental "public purpose" of Knoxville. The legislature will be taken to have intentionally lodged the full power and duty in that regard in its local governmental representative, Park City.

In *Stiles* v. *Newport*, 76 Vt., 154, 171, 56 Atl., 662, followed by *Swanton* v. *Highgate*, 81 Vt., 152, 69 Atl., 667, 16 L. R. A. (N. S.), 867, it was held that where the municipal corporation of Newport had constructed a branch line in another municipality, West Derby, which was devoted wholly to the needs of the latter, and furnished its water supply, that system was tax-

able by West Derby. The court in a comprehensive opinion said:

"The municipal duty of the village of Newport as regards the maintenance of mains and hydrants is confined to its territorial limits. The municipal relation which enters into the question of domestic supply is confined to its own inhabitants. The furnishing of water to the inhabitants of the defendant village is held to be a public use upon the ground that the making of such a provision, while not strictly a municipal duty, is protective of the public health, and therefore a public use within the meaning of the laws relating to taxation. But this reasoning fails when the furnishing of water to the village of West Derby is in question. We see no ground upon which the West Derby branch of this system can be held to be devoted to a public use, either as regards fire protection or domestic needs. The village of Newport owes no municipal duty to the village of West Derby or its inhabitants, and has no municipal interest there. Its sale of water to that village and its inhabitants is for the revenue obtainable thereby, independent of any connection with municipal duty or interest. . . .

"Here, the village of Newport has built and installed a branch outside its corporate limits, which is devoted wholly to the needs of another village, and can never be made available for its own municipal service; and the question is whether the property so created and circumstanced shall be treated as serving

an incidental and therefore a public use. It might not be easy to frame a safe and acceptable definition of an incidental use, but we think it may safely be said that the supplying of the municipal and domestic needs of another municipality through a complete system of distributing pipes and hydrants created for that purpose is not such a use. The plaintiff has assessed the hydrants located in Derby, and we hold that they are taxable.''

The case of *West Hartford* v. *Board of Water Com'rs*, 44 Conn., 360, 367, is much relied upon by appellee city. In that case there was no effort on the part of West Hartford to tax water pipes and hydrants of the city of Hartford, lying within the territory of the former, as in the pending case. The effort was to tax 327 acres of land held by Hartford in the limits of West Hartford for storage of water, to be carried thence to Hartford for the use of its inhabitants. Only a part of that acreage was necessary for that purpose; and this portion was held not to be taxable by West Hartford, but 140 acres thereof not needed and not purchased for such use, but only to get the required quantity, was held liable to taxation. We see nothing in this holding that is out of harmony with the principles upon which we here proceed, but rather the contrary. We think it clear that a reservoir within the boundaries of Park City, owned and operated by Knoxville for its own water supply, would not be subject to taxation by Park City.

The case of *People, ex rel.*, v. *Assessors of Brooklyn,* 111 N. Y., 505, 19 N. E., 90, 2 L. R. A., 148, is not in conflict.   It was there held that a landing place situated in Brooklyn for a ferry owned by the city of New York for the public purpose of serving the inhabitants of both cities was not taxable by the city of Brooklyn.   The landing was deemed an inseparable incident, and any hardship imposed on Brooklyn in the maintenance of police supervision over it as a part of its territory was treated as an immaterial circumstance.   It is thus seen that the property in question served the public of the owning city.

In an opinion handed down on September 26, 1914, the supreme court of Nebraska, in the case of *City of Omaha* v. *Douglas County et al.,* 148 N. W. (Neb.), 938, held that the property of the municipality of Omaha, used to supply with water the inhabitants of that city and its adjacent suburban towns, including a municipality, the city of Florence, was not subject to taxation by the county of Douglas or the city of Florence.   That decision was placed, and well based, on the provisions of the Nebraska constitution and statute, which are broader than ours.   The court said:

"The county of Douglas, school district No. 5, and the city of Florence severally excepted, and each filed a motion for a new trial and appealed from the judgment and order made.

"It will be seen that the question presented is whether property which is municipally owned should

be exempt from taxation. Section 2, art. 9, of the constitution, in part reads:

" 'The property of the State, counties and municipal corporations, both real and personal shall be exempt from taxation, and such other property as may be used exclusively for agricultural and horticultural societies, for schools, religious, cemetery, and charitable purposes, may be exempted from taxation, but such exemption shall be only by general law.'

. . .

"Section 6301, Rev. St. 1913, in part provides:

" 'The following property shall be exempt from taxes: First—all property of the State, counties and municipal corporations.'

"The foregoing provisions were in force in the State before the property in question was sought to be assessed.

"It is contended by the appellants that the case must turn on the construction of the clause in the constitution concerning exemption, that at common law property of a State, county, or city used for public purposes was exempt from taxation, and that the part of our constitution above quoted was merely declaratory of the common law. . . .

"'The brief of appellants contains a long argument calculated to show that under the present system the city of Omaha can keep up the interest, pay off the debt, and soon have a net profit amounting to a large sum of money. That is not the question. Whether Omaha can make money by selling water does not

reach the constitutional provision; neither does it reach the statute. . . .

"The statute seems to be as broad as the constitution, and both constitution and the statute would seem to be plain enough, so that there should be no great doubt as to what was the purpose intended. The framers of the constitutional provision must have intended to exempt all classes of municipally owned property. That would seem to be the only fair interpretation which can be placed upon the language used in the constitution and the statute."

We see nothing in this holding that militates against what we rule in the pending case. That court cites *Smith* v. *Nashville,* 88 Tenn. (4 Pickle), 464, 12 S. W., 924, 7 L. R. A., 469, on the proposition that a municipality's property outside its borders may be exempt from taxation. That case involved the question of privilege taxes, and it was said that a city did not become liable for the payment of such a tax "by reason of the fact that it furnished water to persons outside its own corporate limits, for compensation, who are not shown to have been residents of any city, taxing district, or town falling within the provisions of said act"—the act imposing privilege taxes. By this language there was, as we conceive, safeguarded the principle we adopt in the determination of the instant case.

We hold that the physical property of the complainant city within the boundaries of Park City are not

Knoxville v. Park City.

exempt from taxation so far as they serve the municipal purposes of the latter municipality.

We, of course, are not dealing with the power of Park City to tax a pipe line of the other municipality laid through its territory to serve the public and corporate purposes of the city of Knoxville. Nor are we dealing with a power of Knoxville to sell water, or surplus water, to another municipality to be delivered for distribution by the latter through its own plant.

We also determine that Park City is entitled to collect a privilege tax, at the applicable statutory rate, from the city of Knoxville.

The court of civil appeals, affirming the chancellor, held that the city of Knoxville was not liable to pay either *ad valorem* or privilege taxes. Reversed, with remand for further proceedings in accord with what is herein ruled.